IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Shawn L. Hawkins,                      :

                                  :    Case No. C-1-97-296

             Petitioner     :

                                  :    District Judge Susan J. Dlott

         v.                     :

                                  :    ORDER

Ralph Coyle,                      :

                                  :

             Respondent     :

      This matter is before the Court on Respondent's Corrected Objections to the Magistrate Judge's Report and Recommendations of March 22, 2004 (doc. #207) and Petitioner's Corrected Objections and Appeal to District Court from Magistrate Judge's Report and Recommendations (doc. #210).  In the March 22, 2004 Report and Recommendations (doc. #199), Magistrate Judge Merz recommended granting Petitioner Shawn L. Hawkins' Amended Writ of Habeas Corpus (doc. #65) as to the Second Ground for Relief stated therein, but denying it as to the other twenty-six grounds for relief.  For the reasons that follow, the Court **OVERRULES** both sets of objections and **CONDITIONALLY GRANTS** Petitioner's Amended Writ of Habeas Corpus as to the Second Ground for Relief.

**I.**       **BACKGROUND**

      The facts of this crime as reported in the decisions of the state courts are as follows.

      On June 11, 1989, Diamond Marteen and Jerome Thomas were interested in buying a pound of marijuana.  Terrance Richard knew Shawn Hawkins to be a potential seller.  Richard, Marteen, and Thomas drove to Hawkins' residence on Newbrook Drive in Mt. Healthy, Ohio that evening in a silver-gray Hyundai sedan owned by Richard's mother.  Hawkins negotiated

the terms of a drug deal with the men. Hawkins provided the men with a pager number so that they could contact him later for the delivery of the drugs. The three men showed Hawkins the approximately $1,400 in cash that they intended to use to purchase the marijuana. Thomas testified that Hawkins never entered the Hyundai sedan during the drug deal negotiations.

Thereafter, Richard and Marteen drove Thomas to work at approximately 10:30 p.m. Richard and Marteen then proceeded to the home of Melissa Edwards. They used her telephone to page someone and received a return phone call. Richard and Marteen left Edwards' home after receiving the telephone call.

Some time in the late hours of June 11, 1989, or the early morning hours of June 12, 1989, Richard and Marteen were killed. The bodies of Richard and Marteen were discovered mid-morning on June 12, 1989 in the Hyundai sedan owned by Richard's mother on Elizabeth Street, a residential street in Mt. Healthy. Marteen's body was found in the front passenger seat in a reclined position; Richard's body was found in the rear seat. Each man had been shot twice at close range in the left side of the head. All four shots were fired from a .25 caliber weapon. The weapon was never recovered.

Crime scene investigators determined that the crime had occurred in another location and that the vehicle had been moved shortly after the killings. Investigators found no money in the vehicle except for loose change. Jewelry that Marteen had been wearing the night before was missing from his body. His pants pockets were turned partially inside out. A morgue attendant later found a napkin on which a pager number was written in one of Richard's pockets. The pager number was discovered to be one used by Hawkins.

The police contacted Hawkins as a potential witness to the murders. He admitted to

having discussed a drug deal with the victims on the evening of June 11, 1989.  However,

Hawkins testified at trial that the deal was not consummated because he was unable to get in

touch with his suppliers.  Hawkins told the police that he never saw the victims after 9:00 p.m.

on June 11th.  The police stated that Hawkins denied having entered the Hyundai sedan.

Forensic experts identified two fingerprints matching Hawkins' prints inside the

Hyundai.  One of the prints, a thumbprint, was set in human blood on a blood-spattered notebook

recovered from the floor of the rear of the automobile.  The thumbprint could have been made

only by a bloody thumb touching the notebook or by a thumb touching a bloodstain on the

notebook.  The blood on the notebook was Type A which matched the blood type of both

victims.  The second fingerprint was found on the right rear door of the Hyundai.

Henry Brown, Jr., a seventeen year-old juvenile, eventually came forward to identify

Hawkins as the killer.  Brown told the authorities that on June 12, 1989 at 12:30 a.m. he saw

Hawkins kill Richard in the rear seat of a Hyundai sedan on a cul-de-sac on Newbrook Drive.

Brown stated that Marteen already was dead in the front seat.  Brown stated further that Hawkins

rummaged through the vehicle and drove it from the murder scene.  He described the murder

weapon as a .25 caliber handgun.  He stated that Hawkins was wearing a black muscle shirt at

the time of the murders.

Other witnesses described hearing four gun shots on June 12, 1989, between

approximately 12:30 a.m. and 1:00 a.m., originating in the cul-de-sac area of Newbrook Drive.

Several minutes after the shots, Kenneth Boehmler saw a silver-gray sedan driving in a

suspicious manner on Hudepohl Lane, one block south of the Newbrook Drive cul-de-sac.

When the driver of the sedan exited the vehicle for a few moments, Boehlmer identified him as

3

wearing a dark muscle shirt and described his height, weight, and build in a manner consistent with Hawkins' height, weight, and build. Boehmler also saw someone reclining in the front passenger seat as if asleep.

In September 1989, Hawkins was indicted for the aggravated murders of Richard and Marteen. For each of the two murders, Hawkins was indicted on two counts: one charging that the offense was committed with prior calculation and design and one charging felony murder premised upon aggravated robbery. Each of the four counts of aggravated murder carried two death penalty specifications. Hawkins also was indicted on two counts of aggravated robbery with a firearm.

Hawkins was tried in December 1989 before a jury in the Hamilton County, Ohio Common Pleas Court. He testified on his own behalf and denied the murders and robberies. He also presented the testimony of other witnesses. Nonetheless, the jury convicted Hawkins of all charges and all specifications. The jury recommended a death sentence for each aggravated murder count. The trial court sentenced Hawkins to death.

Hawkins appealed the verdict to the Ohio First District Court of Appeals and the Ohio Supreme Court, both of which affirmed his conviction and sentence of death. The Ohio Supreme Court also *sua sponte* merged the two separate convictions for each murder so that a single death sentence remained for each homicide. The Ohio Supreme Court denied Hawkins' motion for rehearing and the United States Supreme Court denied certiorari. Hawkins' petition for post-conviction relief also was denied by the state courts. Finally, Hawkins' Application to Reopen under Ohio R. App. P. 26(B) and additional motions for reconsideration and petitions for writs of certiorari were denied by the Ohio courts and the Supreme Court.

Hawkins then filed his petition for habeas corpus in this Court in 1997.  Following discovery and an evidentiary hearing, Magistrate Judge Merz issued his Report and Recommendations (doc. #199) on March 22, 2004.  The pending objections filed by both Petitioner and the State followed.

## II.     STANDARD FOR HABEAS CORPUS PETITIONS

Hawkins' petition was filed after April 24, 1996 so it is subject to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  See Richey v. Mitchell, 395 F.3d 660, 671 (6th Cir. 2005).  A habeas petitioner must exhaust all remedies available to him in state court before filing a habeas petition.  See 28 U.S.C. § 2254(b)(1)(A).  The AEDPA requires federal courts to respect any determination made by a state court unless it: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."  28 U.S.C. §§ 2254(d)(1)- (2); see also Williams v. Taylor, 529 U.S. 362, 402-03 (2000).  In Williams, the Supreme Court further explained the meaning of § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-13.  An unreasonable application is more than simply incorrect; it must be objectively unreasonable.  See id. at 409, 411; see also Rompilla v. Beard, No. 04-5462, slip op. at 4 (U.S. June 20, 2005).  "Clearly established Federal law" under § 2254(d)(1) means "the

governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). "Under [the] AEDPA, if there is no 'clearly established Federal law, as determined by the Supreme Court,' that supports a habeas petitioner's legal argument, the argument must fail." Miskel v. Karnes, 397 F.3d 446, 453 (6th Cir. 2005).

Pursuant to 28 U.S.C. § 2254(e)(1), a determination of a factual issue by a state court shall be presumed correct and the applicant shall have the burden of rebutting the presumption by clear and convincing evidence. See McAdoo v. Elo, 365 F.3d 487, 493-94 (6th Cir. 2004). This presumption does not apply to mixed questions of law and fact. See Mitchell v. Mason, 325 F.3d 732, 737-38 (6th Cir. 2003) cert denied 125 S.Ct. 861 (2005). Instead, the "unreasonable application" prong of § 2254(d)(1) applies to mixed questions of law and fact. See id. at 738.

A federal court will not review a question of federal law decided by an Ohio court if the decision rests on a state law ground that is independent of the federal question and adequate to support the judgment. See Coleman v. Thompson, 501 U.S. 722, 729 (1991). This is true whether the state law ground is substantive or procedural. See id. If a state law prisoner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 749.[1]

---

[1] The fundamental miscarriage of justice gateway, also known as an actual innocence gateway, is open to petitioners who submit new evidence showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Williams v. Bagley,

The Sixth Circuit requires a four-part analysis when a state respondent alleges that a

habeas claim is barred by procedural default.

> First, the court must find there is a state procedural rule that applies to the
> petitioner's claim, and the petitioner failed to comply with the rule. . . . Second,
> the court must determine whether the state courts actually enforced the state
> procedural sanction. . . . Third, the court must decide whether the state
> procedural forfeiture is an adequate and independent state ground upon which the
> state can rely to foreclose review of the petitioner's federal constitutional
> claim. . . . [Fourth], once a court determines the petitioner did not comply with a
> state procedural rule, and the rule is an adequate and independent state ground,
> then the petitioner must demonstrate cause for not following the procedural rule
> and prejudice resulting from the alleged constitutional error.

Reynolds v. Berry, 146 F.3d 345, 347-48 (6th Cir. 1998) (citing Maupin v. Smith, 785 F.2d 135

(6th Cir. 1986)) (emphasis added).

In this case, Magistrate Judge Merz held several claims to be barred by procedural

default based on the adequate and independent state ground of *res judicata.*  The Ohio Supreme

Court set forth Ohio's *res judicata* rule in 1967 as follows:

> 7. Constitutional issues cannot be considered in postconviction proceedings under
> Section 2953.21 et seq., Revised Code, where they have already been or could
> have been fully litigated by the prisoner while represented by counsel, either
> before his judgment of conviction or on direct appeal from that judgment, and
> thus have been adjudicated against him.
> * * * *
> 9. Under the doctrine of res judicata, a final judgment of conviction bars a

380 F.3d 932, 973 (6th Cir. 2004) cert denied No. 04-8810, – S.Ct.– (Apr. 25, 2005) (quoting
Schlup v. Delo, 513 U.S. 298, 327 (1995)).  The petitioner must show that it is more likely than
not that a reasonable juror would not have convicted him in light of the new evidence.  See id.
The fundamental miscarriage of justice gateway also can be used to establish that the petitioner
is "actually innocent" of the sentence of death.  See id.  This requires proving "by clear and
convincing evidence that, but for a constitutional error, no reasonable juror would have found the
petitioner eligible for the death penalty under the applicable state law."  Id. (quoting Sawyer v.
Whitley, 505 U.S. 333, 336 (1992)).  A claim of innocence of the death penalty is not a
constitutional claim itself but only a gateway through which the petitioner must pass to have his
otherwise barred constitutional claim heard on the merits.  See id.

> convicted defendant who was represented by counsel from raising and litigating
> in any proceeding except an appeal from that judgment, any defense or any
> claimed lack of due process that was raised or could have been raised by the
> defendant at the trial, which resulted in that judgment of conviction, or on an
> appeal from that judgment.

Ohio v. Perry, 10 Ohio St. 2d 175, 226 N.E.2d 104, at syllabus ¶¶ 7, 9 (1967).  The Ohio *res judicata* rule which requires that claims based solely on facts in the record be raised for the first time on direct appeal has been upheld by the Sixth Circuit as an adequate and independent state law ground for upholding a conviction.  See e.g., Frazier v. Huffman, 343 F.3d 780, 805 amended 348 F.3d 174 (6th Cir. 2003); Buell v. Mitchell, 274 F.3d 337, 349 (6th Cir. 2001).

## III.   ANALYSIS

This Court will address Petitioner's Grounds for Relief following the same logical groupings and in the same order they were analyzed in the Report and Recommendations.

## A.  JURY SELECTION

### FIFTH GROUND FOR RELIEF

**Hamilton County underrepresents minorities in grand juries and overprosecutes death cases against minorities in violation of the Sixth Amendment's fair cross-section clause, the Eighth Amendment's prohibition against cruel and unusual punishment and the Fourteenth Amendment's equal protection and due process clauses.**

Petitioner challenges the manner in which the grand jury venire and grand jury forepersons are chosen in this Ground for Relief.  Petitioner did not raise this issue during his state court pretrial proceedings or on direct appeal.  Petitioner raised this issue for the first time in post-conviction relief proceedings as the thirtieth, thirty-first, and thirty-second claims for relief.  (Doc. #17, ex. KK.)  The trial court held that the issues were barred by the doctrine of *res judicata* under Ohio law.  (Doc. #17, ex. OO p. 25-26.)  The court of appeals affirmed the *res judicata* holding.  See Ohio v. Hawkins, 1996 WL 348024, at *3 (Ohio Ct. App. June 26, 1996).

The Ohio Supreme Court declined review.  See Ohio v. Hawkins, 77 Ohio St. 3d 1486, 673 N.E.2d 145 (1996) (Table).  Based on the state court post-conviction holdings, and in recognition that Ohio R. Crim. P. 6 and 12 require challenges such as those raised by Petitioner to be raised in pretrial proceedings, Magistate Judge Merz recommended denying the Fifth Ground for Relief as procedurally defaulted.

In his objections, Petitioner contends that the Respondent waived this procedural defense by not expressly raising it.  Even assuming this contention to be true, Magistrate Judge Merz's holding was not erroneous.  Federal courts hearing habeas petitions are permitted to raise procedural defaults *sua sponte*, particularly where, as here, the petitioner has been given an opportunity to respond.  See Lorraine v. Coyle, 291 F.3d 416, 426 corrected in 307 F.3d 459 (6th Cir. 2002); see also Morse v. Trippett, No. 00-1868, 37 Fed. Appx. 96, 2002 WL 257207, at *5 (6th Cir. Feb. 20, 2002) (holding that court *sua sponte* may raise default issue not raised by the State so long as the State did not affirmatively waive the defense).

Petitioner also contends that the Fifth Ground was not defaulted because Petitioner raised it as part of his direct appeal in his Application to Reopen the Direct Appeal under Ohio R. App. P. 26(B).  This argument fails because the Ohio Supreme Court recently has held that proceedings under Rule 26(B) are collateral postconviction proceedings and not part of the direct appeal process.  See Morgan v. Eads, 104 Ohio St. 3d 142, 818 N.E.2d 1157, at syllabus (2004).

Next, Petitioner appears to argue that a procedural default should be excused where a petitioner claims that Ohio courts discriminate in the selection of grand jurors, and the petitioner is refused discovery on the issue in post-conviction proceedings.  He cites Rose v. Mitchell, 443 U.S. 545 (1979), wherein the Supreme Court held that discrimination in the selection of grand

jurors is grounds for setting aside a criminal conviction, for the proposition that the Supreme Court does not trust state courts to grant full and fair hearings on claims of discrimination in the selection of grand jurors.  However, as Respondent points out, the Court noted in <u>Rose</u> that "[t]here is no contention in this case that respondents sought to press their challenge to the grand jury without complying with state procedural rules as to when such claims may be raised."  <u>See id.</u> at 559 n.8.  Therefore, there was no issue of procedural default in <u>Rose</u>.  Subsequent to <u>Rose</u>, other federal courts have applied a procedural default to bar claims of discrimination in the selection of grand jurors.  <u>See</u> <u>Pickney v. Cain</u>, 337 F.3d 542, 546 (5th Cir. 2003); <u>Francois v. Wainwright</u>, 741 F.2d 1275, 1283 (11th Cir. 1984).[2]

Petitioner next argues that Ohio has no legitimate state interest in recognizing the procedural default in this case.  The Court disagrees.  The Supreme Court has recognized that the important state interests served by the pretrial objection rule include: "the possible avoidance of an unnecessary trial or of a retrial, the difficulty of making factual determinations concerning grand juries long after the indictment has been handed down and the grand jury disbanded, and the potential disruption to numerous convictions of finding a defect in a grand jury only after the jury has handed down indictments in many cases."  <u>Coleman</u>, 501 U.S. at 745-46.

Finally, Petitioner argues that the ineffective assistance of his appellate counsel in failing to raise the issue on appeal, or the State's concealment of its grand jury foreperson selection

---

[2] In another case cited by Petitioner to support this Ground for Relief, <u>Vasquez v. Hillery</u>, 474 U.S. 254 (1986), the habeas corpus petitioner had moved to quash his state court indictment before trial on the basis that blacks had been systematically excluded from the grand jury.  <u>See id.</u> at 256.  As discussed in more detail later in the text above, that is the procedure that Petitioner here should have followed, but did not follow.  <u>Vasquez</u> does not support Petitioner's argument that the Court should disregard his procedural default.

process, constitute "cause" to excuse the procedural default.  Beginning with the first half of this argument, an ineffective assistance of counsel claim must be presented as an independent claim in state court before it may be used to establish cause for a procedural default.  See Williams, 380 F.3d at 971.  In Ohio, a claim for ineffective assistance of appellate counsel must be raised in a motion for reopening before the state court of appeals pursuant to Ohio R. App. P. 26(B), rather than in a post-conviction proceeding pursuant to Ohio Revised Code ("O.R.C.") § 2953.21.  See id. (citing Ohio v. Murnahan, 63 Ohio St. 3d 60, 65, 584 N.E.2d 1204 (1992)).  Ohio R. App. P. 26(B) provides that "A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel."  The Sixth Circuit has held that ineffective assistance of appellate counsel can supply the cause, which together with prejudice, would excuse a procedural default.  See Richey, 395 F.3d at 679; McFarland v. Yukins, 356 F.3d 688, 699 (6th Cir. 2004).  However, the ineffective assistance of appellate counsel claim must not itself be procedurally defaulted.  See Edwards v. Carpenter, 529 U.S. 446, 452-53 (2000).

Ohio R. App. P. 26(B) requires that the application for reopening be filed within 90 days of the appellate court decision unless the applicant shows "good cause" for filing at a later date.  Hawkins did not file his Rule 26(B) Application to Reopen until more than two years after the court of appeals decision, and the state courts denied the motion as untimely.  (Doc. #17 ex. GGG).[3]  In a similar situation where a petitioner's Rule 26(B) motion was denied as untimely, the Sixth Circuit held that the "good cause" standard of Rule 26 has not been applied with the

_____

[3] Ohio v. Hawkins, Nos. C-900092, C-910017, slip op. (Ohio Ct. App. July 21, 1995) aff'd 74 Ohio St. 3d 530, 660 N.E.2d 454 (1996).

11

regularity or consistency needed to provide an adequate state law procedural basis to preclude

federal habeas relief.  See Richey, 395 F.3d at 680.  The Sixth Circuit held, therefore, that the

petitioner's challenge to the effectiveness of his appellate counsel was preserved.  See id.

Likewise, Petitioner's challenge to the effectiveness of his appellate counsel was preserved here

and the merits of his ineffective assistance of appellate counsel claim must be examined to

determine if they provide cause and prejudice for the procedural default of his Fifth Ground for

Relief.

 Ordinary attorney error cannot constitute cause.  See Murray v. Carrier, 477 U.S. 478,

488 (1986); Lucas v. O'Dea, 179 F.3d 412, 419 (6th Cir. 1999).  "Attorney error does not

amount to 'cause' unless it rises to the level of a constitutional violation of the right to counsel

under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)."

Williams, 380 F.3d at 970; see also Lucas, 179 F.3d at 419.  To establish ineffective assistance

of counsel under Strickland, it must be shown that counsel's performance was deficient and that

the deficient performance so prejudiced the defense that the trial was rendered unfair and the

result unreliable.  See 466 U.S. at 687.

 Petitioner's appellate counsel were not ineffective under Strickland for not raising this

claim on direct appeal.  Ohio R. Crim. P. 6 and 12 require that challenges to the sufficiency of an

indictment or to the qualifications or composition of a grand jury be made in pretrial

proceedings.  Petitioner has not alleged that his trial counsel was ineffective for failing to make

these challenges.  The Ohio Supreme Court has held that the failure to raise an issue to the trial

court regarding the composition of a grand jury results in waiver.  See Ohio v. Issa, 93 Ohio St.

3d 49, 61, 752 N.E.2d 904 (2001).  Appellate counsel is not ineffective for failing to raise on

appeal an issue that was not properly preserved before trial.  See Ohio v. Hutton, 100 Ohio St. 3d 176, 797 N.E.2d 948, ¶ 54 (2003) (appellate counsel can reasonably decide not to raise issues that were waived at trial).  Thus, the alleged ineffectiveness of Petitioner's appellate counsel does not provide cause to excuse the procedural default of the Fifth Ground for Relief.

Turning to Petitioner's argument that the State's concealment of its grand jury foreperson selection process constitutes cause to excuse the procedural default, Petitioner agrees that the process for selecting grand jury forepersons is a matter of statute and is not concealed.  See O.R.C. § 2939.02.  Petitioner contends that abuse of the process was concealed because Petitioner could not obtain the gender and race of each grand jury foreperson without a subpoena.  Petitioner contends that state court judges had denied him the right to subpoena the records during the post-conviction proceedings.  However, Petitioner does not explain why his counsel did not seek to discover the grand jury records during the pretrial proceedings as part of a motion under Ohio R. Crim. P. 6 or 12 to move to dismiss the indictment or to challenge the sufficiency of the indictment.  Accordingly, Petitioner has not adequately proven cause and prejudice to excuse the procedural default.

Accordingly, Petitioner's objections are overruled and Petitioner's Fifth Ground for Relief is denied.

**TWENTY-FOURTH GROUND FOR RELIEF**

**The prosecutorial misconduct and ineffectiveness of trial counsel during the voir dire phase of Hawkins' trial violated his rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments.**

In this claim, Petitioner alleges that during voir dire the prosecutors improperly asked whether the prospective jurors would be able to recommend the death penalty and that his trial

counsel were ineffective for failing to object.  Magistate Judge Merz denied this claim on the

basis of procedural default.  Petitioner raised the issue of prosecutorial misconduct for the first

time on direct appeal.  The court of appeals held the issue was waived because it was not brought

to the trial court's attention at a time when it could have been corrected.  See Hawkins, 1991 WL

270633, at *7.[4]  The Ohio Supreme Court summarily denied the issue without a substantive

discussion.  See Hawkins, 66 Ohio St. 3d at 350-51.

In his objection to this subclaim, Petitioner argues that the Ohio Supreme Court's

summary denial of the issue on direct appeal did not clearly and expressly rest on the doctrine of

res judicata.  See Hawkins, 66 Ohio St. 3d at 350-51.  In such situations, however, this Court

"looks through" the Ohio Supreme Court to the prior reasoned decision of the appeals court that

addressed the procedural issue on the merits.  See Ylst v. Nunnemaker, 501 U.S. 797, 803-04

(1991); Frazier, 343 F.3d at 805.  The court of appeals had held on direct appeal that Petitioner

had waived the issue.  See Hawkins, 1991 WL 270633, at *7.  Moreover, in the last reasoned

state court opinion, the court of appeals held in the post-conviction proceedings that the claim

was barred by res judicata.  See Hawkins, 1996 WL 348024, at *5.  Accordingly, this Court

agrees with Magistrate Judge Merz that this subclaim is procedurally defaulted based on the state

---

[4] Ohio's contemporaneous objection rule states that parties must call errors to the trial court's attention which can be avoided or corrected at that time in order to preserve the error for appeal.  See Ohio v. Williams, 51 Ohio St. 2d 112, 364 N.E.2d 1364, at syllabus ¶ 1 (1977) abrogated on other grounds Williams v. Ohio, 438 U.S. 911 (1978).  The only exception to the contemporaneous objection rule is that "plain errors or errors affecting substantial rights" are not waived by the failure to make a contemporaneous objection.  See Ohio R. Crim. P. 52(B); see also Ohio v. Murphy, 91 Ohio St. 3d 516, 532, 747 N.E.2d 765 (2001).  The Ohio evidence rule "constitutes an adequate and independent state ground that bars federal habeas review absent a showing of cause and prejudice."  Mason v. Mitchell, 320 F.3d 604, 635 (6th Cir. 2003) (citing Hinkle v. Randle, 271 F.3d 239, 244 (6th Cir. 2001)).

court's application of the *res judicata* doctrine.

In the second subclaim, Petitioner asserts that his trial counsel were ineffective for failing to object to the prosecutor's misconduct during voir dire. Petitioner raised this claim in the post-conviction relief proceedings. (Doc. #17 ex. OO.) The trial court held that this subclaim also was supported solely by reference to the trial record and was barred by the doctrine of *res judicata*. (Id. ex. OO at 34-36.) The court of appeals concurred. See Hawkins, 1996 WL 348024, at *5. As such, the claim is procedurally defaulted.

Petitioner nonetheless contends that the ineffectiveness of his appellate counsel excuses the default. He raised the issue of the ineffectiveness of his appellate counsel in his Motion for Reconsideration to the Supreme Court and in his Ohio R. App. P 26(B) Application to Reopen. (Doc. #17 ex. WW p. 11; id. ex. CCC p. 8.) He argues that his appellate counsel should have raised on appeal that trial counsel were ineffective for not objecting during the trial. However, as stated above in regards to the Fifth Ground for Relief, "[a]ttorney error does not amount to 'cause' unless it rises to the level of a constitutional violation of the right to counsel under Strickland." Williams, 380 F.3d at 970. A deficient performance for purposes of Strickland is one that falls below objective standards of reasonableness as measured by prevailing professional norms. See Bigelow v. Williams, 367 F.3d 562, 570 (6th Cir. 2004). Courts must "'indulge a strong presumption' that a lawyer's conduct in discharging his duties 'falls within the wide range of reasonable professional assistance.'" Id. (quoting Strickland, 466 U.S. at 689). Appellate counsel need not raise every nonfrivolous claim on direct appeal in order to provide effective assistance. See Williams, 380 F.3d at 971. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be

15

overcome." Id. (quoting Monzo v. Edwards, 281 F.3d 568, 579 (6th Cir. 2002)). In another case, the Sixth Circuit stated that counsel's errors must have been so serious that counsel was "scarcely functioning as counsel at all." McMeans v. Brigano, 228 F.3d 674, 682 (6th Cir. 2000). Whether counsel was constitutionally ineffective is a mixed question of law and fact subject to the "unreasonable application" test of § 2254(d)(1). See Mitchell, 325 F.3d at 738.

Under the prejudice prong of the Strickland test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. A reasonable probability is one that "is sufficient to undermine confidence in the outcome." Id. The Supreme Court further explained:

> When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer--including an appellate court, to the extent it independently reweighs the evidence--would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.

Id. at 695. A petitioner has not established prejudice if a court is left with only speculation on whether the outcome would have been different. See Baze v. Parker, 371 F.3d 310, 322 (6th Cir. 2004).

The Sixth Circuit has suggested eleven factors to consider when examining whether appellate counsel was ineffective:

> (1) Were the omitted issues "significant and obvious"?
> (2) Was there arguably contrary authority on the omitted issues?
> (3) Were the omitted issues clearly stronger than those presented?
> (4) Were the omitted issues objected to at trial?
> (5) Were the trial court's rulings subject to deference on appeal?
> (6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
> (7) What was appellate counsel's level of experience and expertise?

16

(8) Did the petitioner and appellate counsel meet and go over possible issues?
(9) Is there evidence that counsel reviewed all the facts?
(10) Were the omitted issues dealt with in other assignments of error?
(11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

Mapes v. Coyle, 171 F.3d 408, 427-28 (6th Cir. 1999).

The Court cannot agree that appellate counsel were deficient for not raising on direct appeal the issue of trial counsel's ineffectiveness for failing to object to the prosecutors' statements during voir dire.  Petitioner contends that the trial counsel were deficient for not objecting to the following instances of alleged misconduct: (1) prosecutors repeatedly asking prospective jurors if they could "recommend" the death penalty; (2) prosecutors improperly vouching for Keith Miree; and (3) prosecutors offering improper opinion and improper argument.  Also, Petitioner contends that trial counsel were ineffective for not striking certain jurors.

As to the first subclaim, Petitioner makes no citation to the trial record for the alleged numerous instances where the prosecutors asked prospective jurors if they could recommend the death penalty.  Under O.R.C. § 2929.03(D)(2) and (3), the jury and the trial court make independent findings as to whether the aggravating circumstances outweigh the mitigating factors.  Neither the trial court nor the reviewing appellate courts are bound by a jury's death recommendation.  Thus, although the Ohio Supreme Court has repeatedly stated a preference that no reference be made to the jury about the finality of their decision, it is harmless error to make accurate comments about the jury's role.  See e.g., Ohio v. Gumm, 73 Ohio St. 3d 413, 431, 653 N.E.2d 253 (1995); Ohio v. Broom, 40 Ohio St. 3d 277, 291-92, 533 N.E.2d 682 (1988); Ohio v. Williams, 23 Ohio St. 3d 16, 490 N.E.2d 906 (1986).  Thus, neither trial counsel

17

nor appellate counsel were deficient for not raising this issue.

As to the second subclaim, the Court discusses the alleged instances of improper vouching at greater length in regards to the Twenty-Fifth Ground for Relief, *infra*.[5] The Court finds that only two of the instances cited by Petitioner might constitute improper vouching, but that neither instance was flagrant, nor likely to prejudice the defendant, nor likely to render the trial unfair. Thus, neither trial counsel nor appellate counsel were deficient for not raising this issue.

As to the third subclaim, the alleged instances of prosecutorial misconduct by the insertion of opinion or improper argument, the instances either were not improper taken in context, or alternatively, did not prejudice Hawkins. Hawkins alleges prosecutorial misconduct when the prosecutor stated that he represented the people of Hamilton County and the State of Ohio, that the State was entitled to a fair trial, and that he was not there to "railroad" Hawkins. (T.p. 329, 404, 668.) Again, the Court finds that the prosecutor's statements in context were not likely to prejudice Hawkins nor render the trial unfair. Neither trial counsel nor appellate counsel were deficient for not raising this issue.

Finally, at to the fourth subclaim, Petitioner states that his trial counsel should have struck particular jury members. The Court has looked carefully at the referenced sections of the venire questioning. Taken in context, the Court finds that none of the answers provided by the jurors indicated a likelihood that they would be biased for or against Hawkins or that they would

---

[5] Petitioner erroneously states in his brief and his Amended Petition that his claim refers to prosecutorial vouching for Keith Miree. It is clear from the argument presented and from the transcript pages cited, however, that Petitioner meant to state that his claim involved prosecutorial vouching for Henry Brown.

not listen to the judge's instructions.[6]  Neither trial counsel nor appellate counsel were deficient for not raising this issue.

Accordingly, Petitioner's objections are overruled and the Twenty-Fourth Ground for Relief is denied.

## B. TRIAL COURT ERROR

**NINTH GROUND FOR RELIEF**

**The trial court violated Hawkins' rights to speedy trial as guaranteed by the Sixth, Eighth and Fourteenth Amendments.**

In the Ninth Ground for Relief, Petitioner contends that his federal right to a speedy trial was violated.  Magistate Judge Merz held that this claim was procedurally defaulted because Petitioner failed to raise it during his state post-conviction relief proceedings.  Instead, Petitioner argued before the Ohio courts only that he was not provided a speedy trial in violation of O.R.C. § 2945.71.  Both the court of appeals and the Ohio Supreme Court found the state-law based

---

[6] One juror merely (1) implied that she would consider all the evidence and law before reaching a decision because that is what she would want jurors to do for her, (2) admitted that she had not known that she could not infer guilt from a defendant's decision not to testify, but would abide by an instruction to that effect from the judge, and (3) expressed that an expert's credentials "speak well to [her]."  (T.p. 181, 188-89, 192.)  A second juror stated that in regards to a question of whether he would automatically disbelieve Hawkins because he was a convicted felon, that he hoped he would try the case based on the evidence and later stated that he would evaluate the weight to give Hawkins' testimony the same as he would other witnesses.  (T.p. 247.)  The third juror admitted that it would be difficult to treat Hawkins the same as other witnesses, but also stated "I don't think this is going to be a problem."  (T.p. 313-14.)  A fourth juror stated "I think so" in response to a question whether she would be able to abide by the judge's instruction to ignore questions and answers that the judge had struck.  (T.p. 530.)  A fifth juror regularly used the term "I believe so" in response to questions about whether he would afford Hawkins' his constitutional rights and inferences.  (T.p. 815-30.)  A sixth juror said she would "try" and that she would make her best attempt to handle viewing pictures of the autopsy.  (T.p. 890.)  A seventh juror agreed with defense counsel's statement that he would not expect police officers to be deceitful in their testimony, but also stated that he would judge their credibility.  (T.p. 980-81.)

issue to be without merit.  See Hawkins, 1991 WL 270633, at *4-5 aff'd 66 Ohio St. 3d at 343.

Federal habeas relief is available on a claim only after the petitioner has exhausted the claim in

state court.  See 28 U.S.C. § 2254(b)(1) & (c).  Thus, Magistate Judge Merz found that because

Petitioner had not exhausted in state court a claim for violation of his *federal* right to a speedy

trial, the claim was procedurally defaulted.  Claims raised in federal habeas proceedings that rest

on different theories than those presented in the state post-conviction relief proceedings are

procedurally defaulted.  See Lorraine, 291 F.3d at 425.  This Court is permitted to raise *sua*

*sponte* the procedural default, even if Respondent addressed the claim on the merits.  See

Lorraine, 291 F.3d at 426; Morse, 2002 WL 257207, at *5.  Accordingly, Petitioner's objections

are overruled and the Ninth Ground for Relief is denied.

**TENTH GROUND FOR RELIEF**

**The trial court violated Hawkins' right to be present at all critical stages of the proceedings when Hawkins was not present for a day of voir dire and to respond to a jury question, thus violating his rights guaranteed by the Sixth, Eighth and Fourteenth Amendments.**

In this Tenth Ground for Relief, Petitioner raises two sub-claims: (1) that his right to be

present at all critical stages of the proceedings was violated when the judge made an *ex parte*

communication to the jury and (2) that his right to be present at all critical stages was violated

when he was not present for an entire day of voir dire.  Petitioner raised the first subclaim on

direct appeal.  The court of appeals found that the *ex parte* communication by the judge was the

mere calling for an adjournment and was made with the consent of counsel.  See Hawkins, 1991

WL 270633, at *7.  The court of appeals also found that the judge did not respond to the jury's

question *ex parte*, but deferred the question until all counsel were present in open court.  See id.

The Ohio Supreme Court did not address the claim directly, but instead stated that "[w]ith

respect to appellant's remaining propositions of law, after careful review of the record and case

law, we fail to detect any errors that may be considered to have affected the outcome of

appellant's trial." Hawkins, 66 Ohio St. 3d at 350-51.

Magistrate Judge Merz denied the *ex parte* subclaim on the merits.  Magistrate Judge

Merz thoroughly reviewed the applicable portions of the trial court transcript and this Court

adopts his accurate summation as if fully re-stated herein. On the subject of *ex parte*

communications, the Sixth Circuit has stated as follows:

> The right of the accused to be present during all critical stages of a trial against
> him is fundamental.  *Ex parte* communications are absolutely discouraged and a
> question from the jury should be answered in open court, after providing the
> defendant with an opportunity to be heard. Nevertheless, even if a judge
> improperly participates in *ex parte* communications, such communications will
> not necessarily constitute reversible error. There must be a reasonable possibility
> that the *ex parte* communications affected the verdict.

United States v. Paul, No. 01-1284, 57 Fed. Appx. 597, 2003 WL 173059, at *5 (6th Cir. Jan. 23,

2003) (citations omitted).  Where such *ex parte* communications occur, the trial court should

give the parties notice regarding the facts of the communication on the record.  See Standard

Alliance Industr., Inc. v. Black Clawson Co., 587 F.2d 813, 828 (6th Cir. 1978).

The *ex parte* communication here is grounds for relief only if it caused prejudice to

Petitioner.  See Paul, 2003 WL 173059, at *5-6.  Petitioner claims that he suffered prejudice

because the jury might have inferred from his absence and defense counsel's absence that "this

was not important enough for defense counsel to be here, . . . that defense doesn't care, that

defendant does not care."  (T.p. 2417.)  The Court does not agree.  This case is not like the one

cited by Petitioner in which the trial court encouraged a guilty verdict in its *ex parte*

communication to a deadlocked jury by telling them to "[c]onsider the offense further."  See

21

United States v. Benavides, 549 F.2d 392, 393 (5th Cir. 1977). The trial judge here did not give

any substantive instructions or make any substantive comments. He repeatedly expressed

concern using inclusive language about proceeding in any fashion without Hawkins, his counsel

and the prosecution present. (T.p. 2405-08.) Nothing in the trial judge's statements to the jury

could be construed as an expression by the trial judge as to Hawkins' guilt or innocence. As

such, Petitioner's substantive rights were not violated. Petitioner's objections to this subclaim

are overruled.

As to the second subclaim, Magistrate Judge Merz held that the claim was procedurally

defaulted because Petitioner did not raise the issue that he had been absent during a portion of

the voir dire in the direct appeal or post-conviction relief proceedings. This Court is permitted to

raise *sua sponte* the procedural default, even if Respondent addressed the claim on the merits.

See Lorraine, 291 F.3d at 426; Morse, 2002 WL 257207, at *5. Accordingly, the Court agrees

that this subclaim is barred by Petitioner's procedural default.

Alternatively, Magistrate Judge Merz also denied the second subclaim on the merits.

Magistrate Judge Merz held that the Petitioner's claim was not supported by the trial transcript.

Again, Magistrate Judge Merz thoroughly reviewed the applicable portions of the trial court

transcript and this Court adopts his accurate summation as if fully re-stated herein. Defense

counsel pointed out that Petitioner was absent when Court started its afternoon voir dire session

on December 8, 1990, but defense counsel did not object to proceeding. (T.p. 875.) The session

began with an off-the-record conversation with counsel, and then debate on the record as to

which venire member was next to be examined. (T.p. 875-77.) Although it is not clear when

Petitioner entered the courtroom, the record reflects that he was seated in the courtroom within

moments after the substantive questioning of the venire member began.  (T.p. 879.)  Petitioner

simply has failed to prove a constitutional violation occurred in regards to the second subclaim.

Accordingly, the Court overrules Petitioner's objections and denies the Tenth Ground for

Relief.

**TWENTY-THIRD GROUND FOR RELIEF**

**The trial court made many erroneous rulings during Hawkins' trial violating Hawkins' rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments.**

In the Twenty-Third Ground for Relief, Petitioner asserts that the trial court made four

particular erroneous rulings during the trial.  Petitioner raises only three of the rulings in his

Objections to the Report and Recommendations:  (1) the trial court's refusal to play Henry

Brown's taped statements to the jury or to allow the jury to re-hear the trial testimony of Henry

Brown or his sister, Shawn Brown; (2) the trial court's denial of Hawkins' motion to compel

discovery or for the police to turn over their entire investigative file; and (3) the trial court's

failure to allow defense counsel to inform the jury that Shawn Brown's mother coached her

during her testimony.  Petitioner did not raise these subclaims on direct appeal, but only during

the post-conviction relief proceedings.  The trial court found in the post-conviction relief

hearings that the subclaims were barred by the doctrine of *res judicata* as they were based solely

on the record and could have been raised on direct appeal.  (Doc. #17, ex. OO at 16, 31-32, 38.)

Specifically regarding the trial court's ruling that prohibited defense counsel from informing the

jury that someone was coaching Shawn Brown during her testimony, the trial court also stated in

the post-conviction relief proceedings that Petitioner did not present sufficient evidence *de hors*

to defeat *res judicata*.  (Id. ex. OO at 32.)  The court of appeals concurred.  See Hawkins, 1996

WL 348024, at *5. *Res judicata*, an adequate and independent state ground sufficient to bar federal habeas review, is firmly established and regularly followed. See Frazier, 343 F.3d at 805; Buell, 274 F.3d at 349.

In his objections, Petitioner asserts that during the post-conviction relief proceedings the trial court did not make the findings of fact and conclusions of law necessary to support a finding of procedural default because the trial court merely signed a proposed entry submitted by the State. The record supports a finding that the State submitted proposed findings of fact and conclusions of law to the trial judge and that Hawkins moved to strike the filing, (doc. #70 ex. I attachment A), but it is not clear that the trial court's subsequent order is a verbatim copy of the proposals by the State, (doc. #17 ex. OO).

O.R.C. § 2953.21(G) requires a state court in post-conviction relief proceedings to issue findings of fact and conclusions of law with an entry of judgment granting or denying relief. In Ohio v. Mapson,1 Ohio St. 3d 217, 218, 428 N.E.2d 910 (1982), the Ohio Supreme Court held that a trial court's issuance of a judgment entry without the requisite findings of fact and conclusions of law does not trigger the running of the time period for purposes of filing an appeal. The purpose of the requirement is to provide a basis upon which the appellate court can conduct a meaningful judicial review. See id. at 219. The Ohio Supreme Court in Mapson did not, as Petitioner implies, address the validity of a trial court's findings and conclusions if the court merely has signed a proposed entry submitted by the prosecution. Additionally, the Ohio First District Court of Appeals repeatedly has held that a trial court's "adoption of the findings of fact and conclusions of law submitted by the state does not, of itself, deprive a petitioner of meaningful review of his petition for postconviction relief and does not constitute error in the

24

absence of demonstrated prejudice." Hawkins, 1996 WL 348024, at *2; see also Ohio v. Van Hook, No. C-910505, 1992 WL 308350, at *4 (Ohio Ct. App. Oct. 21, 1992); Ohio v. Beuke, No. C-900178, 1991 WL 155219, at *1 (Aug. 31, 1991). Hawkins has not established prejudice here nor has he pointed to any state or federal decision wherein a *res judicata* finding was successfully challenged on this basis.

Next, Petitioner argues that the ineffectiveness of his appellate counsel for failing to raise these issues on direct appeal establishes the cause and prejudice necessary to overcome the procedural default. As discussed above, the Sixth Circuit has held that ineffective assistance of appellate counsel can supply the cause, that together with prejudice, would excuse a procedural default. See Richey, 395 F.3d at 679; McFarland, 356 F.3d at 699. Petitioner asserted in his Ohio R. App. P. 26(B) Application to Reopen that his appellate counsel was deficient for not raising on appeal the trial court's error in denying the motion to compel as the second assignment of error, the trial court's error in failing to place on the record that Marlena Brown was coaching her daughter, Shawn Brown, during Shawn Brown's testimony as the nineteenth assignment of error, and the trial court's error in not permitting the jury to hear the taped statements of Henry Brown's prior statements as the twenty-ninth assignment of error. (Doc. #17 ex. CCC p. 5, 8, 9.)[7] Hawkins did not file his Rule 26(B) Application until more than two years after the court of appeals decision and the state courts denied the motion as untimely.

---

[7] Petitioner had also argued in his Motion for Reconsideration to the Ohio Supreme Court that his appellate counsel was ineffective for failing to raise these issues. (Doc. #17, ex. WW p. 6, 10, 12.) The Ohio Supreme Court denied the motion without discussion. (Id. ex. YY.)

(Doc. #17 ex. GGG).[8]  However, because the "good cause" standard of Rule 26 has not been

applied with the regularity or consistency needed, it is not an adequate procedural grounds to bar

the claim here.  See Richey, 395 F.3d at 680.  Thus, the Court must consider on the merits

whether appellate counsel was constitutionally deficient under Strickland for failing to raise the

three subclaims on direct appeal.

     **a. Browns' Tapes and Testimony.**  In regards to the Henry Brown tapes, defense

counsel suggested that they be permitted to play the tapes of Brown's prior interviews with the

police in their entirety during Brown's cross-examination to help Brown recall what specific

statements he had made previously to the police that were false and inconsistent with his trial

testimony.  (T.p. 1432-39.)  The trial judge did not allow defense counsel to play the tapes, but

instead he permitted defense counsel to question Brown at length about the veracity of individual

statements Brown had made in his previous taped interviews based on the transcripts of those

interviews.  (T.p. 1437-41, 1451-82.)  Given the extensive cross-examination and the fact that

the State was forthright about the many prior inconsistent stories Brown had told the police, as

discussed in the Twenty-Seventh Ground for Relief, *infra*, the jury had ample evidence upon

which to question Brown's credibility without hearing the tapes for themselves.  The Court finds

that appellate counsel was not constitutionally ineffective for omitting this issue on appeal.

     Turning to the related issue of appellate counsel's failure to raise on appeal that the trial

court should have granted the jury's request to read the transcripts of or re-hear the testimony of

Henry Brown and Shawn Brown, Hawkins' trial attorneys opposed the jury's request.  (T.p.

---

     [8] Ohio v. Hawkins, Nos. C-900092, C-910017, slip op. (Ohio Ct. App. July 21, 1995)
aff'd 74 Ohio St. 3d 530, 660 N.E.2d 454 (1996).

2376-88, 2393.)  Hawkins' trial attorney stated that he thought to do so would "highlight[ ] the testimony" and that the jurors should depend upon their recollection.  (T.p. 2378, 2393-94.)  Because Hawkins' trial counsel opposed the re-reading of the testimonies, Hawkins' appellate counsel could not object on direct appeal that the trial judge should have permitted the re-reading of the testimonies.  The action of trial counsel waived that issue for purposes of the direct appeal.

Moreover, Petitioner relies only on speculation when he suggests that the jury wanted to re-hear the testimony of Shawn Brown and Henry Brown in order to further evaluate their credibility.  The jury did not state a reason for its request in its first note to the trial judge.  (T.p. 2376-77.)  In the second note, the jury asked to hear specifically about Henry Brown's "happenings in the early morning hours of June 12 from the time he left Tameka's house until he got home to his sister."  (T.p. 2393.)  Given the damaging nature of Henry Brown's testimony against Hawkins in that time period, it was a reasonable strategy decision for Hawkins' trial counsel to avoid re-highlighting that testimony during jury deliberations.  (T.p. 2378.)  Accordingly, appellate counsel was not constitutionally ineffective for not raising the issue on direct appeal.

**b.  Motions.**  In the next subclaim, Petitioner submits that appellate counsel was ineffective for not raising on direct appeal that the trial court erred by denying Hawkins' motions to compel discovery and for the police to turn over their entire investigative file.  This subclaim is cross-referenced with the Seventh Ground for Relief, *infra*, and will be discussed at length therein.

**c.  Coaching of Testimony.**  The last subclaim involves the alleged coaching of Shawn Brown during her testimony by her mother.  During Shawn Brown's cross-examination, defense

counsel stopped his questioning and indicated to the judge that he heard what sounded like a woman's voice coming from the left rear corner of the courtroom attempting to coach Shawn Brown's testimony.  (T.p. 1383-84.)  Defense counsel requested that the judge ask the people in the courtroom to identify themselves for the record and the judge initially agreed.  (T.p. 1384.)  However, instead of then asking the people to identify themselves, the judge asked Shawn Brown if she heard anyone suggest an answer to her.  (T.p. 1384.)  Shawn Brown responded that she had problems hearing and that she had not heard anyone suggest an answer to her.  (T.p. 1384-85.)  Defense counsel then proceeded with its cross-examination without interruption and without again requesting to have the people in the courtroom identified.  (T.p. 1385-87.)  In discovery obtained in this case, Doris Hull, Petitioner's aunt, stated in an affidavit that she saw Shawn Brown's mother "mouthing answers" to Shawn Brown during her testimony in regards to a gun.  (Doc. #70, ex. A(38).)

Petitioner contends that appellate counsel was ineffective for not raising on appeal that the trial court erred by not having the people in the courtroom identify themselves.  Petitioner suggests that had Shawn Brown's mother identified herself then defense counsel would have called her as a witness.  The problem with this argument is that even had Shawn Brown's mother identified herself, at the same time the other spectators in the gallery identified themselves, that alone would not have established that she was the one who "coached" Shawn Brown.  Defense counsel stated clearly that it "[s]ounded like a lady's voice but I could not tell you who it was." (T.p. 1384.)  Additionally, even if Shawn Brown's mother had been identified as the speaker, there is no evidence in the record as to how she would have testified.  There is no evidence in the record as to what she said in her attempt to "coach" Shawn Brown.  Nor is there any evidence

28

that she would have testified in a way that impeached the credibility of Shawn Brown or Henry

Brown, or in a way that would have been beneficial or prejudicial to Hawkins.  As such,

appellate counsel was not ineffective for not raising the trial court's alleged error on appeal.

      Petitioner's objections are overruled and the Twenty-Third Ground for Relief is denied.

**TWENTY-SEVENTH GROUND FOR RELIEF**

**The trial court violated Hawkins' rights to confront, present a defense, due process and equal protection as guaranteed by the Sixth, Eighth and Fourteenth Amendments when the trial court failed to disclose and seal Henry Brown's juvenile records.**

      Henry Brown was a key witness for the prosecution at trial.  Brown was originally

charged for his involvement in the offenses, but he testified at trial in exchange for immunity.

Defense counsel repeatedly requested access to Brown's juvenile records for the purpose of

impeaching his credibility and establishing his bias at trial.  The trial court refused to disclose the

evidence.  Instead, the trial court conducted an *in camera* review and determined that the

information contained in the juvenile records either was already known to defense counsel or

would not assist Hawkins in the preparation of his case.  (T.p. 9.)

      This claim was addressed on the merits during Hawkins' direct appeal and thus is not

procedurally defaulted.  On direct appeal, the Ohio Supreme Court held that Hawkins' due

process rights were not violated because he did not demonstrate any particular need for the

records, and thus he made no threshold showing that he was entitled to discover Brown's

juvenile records.  See Hawkins, 66 Ohio St. 3d at 346.  The juvenile records later were disclosed

during these habeas proceedings.

      Two conflicting rights are at stake in regards to this issue.  The first is the Sixth

Amendment right of a criminal defendant "to be confronted with the witnesses against him."

29

U.S. Const. Amend VI. The second is the right to privacy afforded by states to juveniles. The right of a criminal defendant to confront a witness generally trumps a state's interest in protecting the privacy of juveniles. See Davis v. Alaska, 415 U.S. 308, 319 (1974).[9] However, a defendant's confrontation right is violated only when the defendant is completely barred from exploring a relevant subject on cross-examination. See Dorsey v. Parke, 872 F.2d 163, 166-67 (6th Cir. 1989). The confrontation right is not necessarily violated when a trial judge only limits the extent of cross-examination. See id. at 167.

The Sixth Circuit has instructed that courts should conduct the following analysis when a defendant's right to cross-examination conflicts with a witness's right to privacy:

> If a trial court has curtailed cross-examination from which a jury could have assessed a witness's bias, prejudice or motive to testify, a court must take two additional steps. First, a reviewing court must assess whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory of bias or improper motive. Second, if this is not the case, and there is indeed a denial or significant diminution of cross-examination that implicates the Confrontation Clause, the Court applies a balancing test, weighing the violation against the competing interests at stake.

Boggs v. Collins, 226 F.3d 728, 739 (6th Cir. 2000) (citations omitted). For example, a court in the Northern District of Ohio held that a defendant's confrontation right was not violated when the defendant could not inquire about witness's prior history of juvenile delinquency because the witness had testified as to his age, custody status, and the possibility of a leniency agreement

---

[9] In Davis, the trial court had precluded the defendant from cross-examining the state's crucial witness about his juvenile conviction for burglary. See id. at 310-11. The defendant sought to prove the witness was biased in favor of the police out of fear or concern that his probation would be in jeopardy if he did not cooperate or that he might be a suspect for the crime for which the defendant was charged. See id. at 311. The Supreme Court held that without being able to mention the witness' juvenile status, the defendant was not able to present a record from which a jury might conclude that the witness was biased. See id. at 318. The Supreme Court reversed the appeal court's affirmation of the defendant's conviction. See id. at 320-21.

with the prosecution.  See Mann v. Gray, 622 F. Supp. 1225, 1228-1229 (N.D. Ohio 1985).  The information to which the witness had testified was enough to allow a "'discriminating appraisal' of his motives and bias." Id. at 1229.

Thus, the issue here is whether Brown testified sufficiently at Hawkins' criminal trial about his criminal status and history that the jury was able to make a discriminating appraisal of his motives and bias without the disclosure of his juvenile records.  Petitioner contends that the following information in the juvenile records would have been relevant to his defense: (1) seven days after Brown's arrest, the State dismissed an unrelated assault charge pending against him in juvenile court; (2) Brown admitted to the police that he had been present at the shooting of two individuals by a known accomplice during an aggravated robbery that was the result of a drug transaction which Brown acknowledged he participated in; (3) Brown had been in a drug care unit for three months in 1988; (4) Brown was convicted of robbery in 1988, petty theft in 1987, disorderly conduct in 1985, and assault in 1985.  Petitioner submits that defense counsel would have used this information on cross-examination of Brown had it been available.  (Doc. #212 at Bates 4056, 4062-63, 4093, 4152-78.)  Petitioner contends that this information would have made the difference between conviction and acquittal.

Applying the Boggs analysis, the Court finds that Petitioner's rights under the Confrontation Clause were not violated.  The trial court did not completely curtail Hawkins' right to cross-examine Brown as to his bias and motives.  Jury members learned before Brown's testimony and on direct examination that the police originally charged Brown for involvement in the murders and that Brown was being held in police custody at the time of the trial.  (T.p. 848, 893, 933, 1273-74, 1426.)  The jury also learned that the State had made an immunity deal with

31

Brown that all charges against him would be dropped in exchange for his testimony about the murders.  (T.p. 1273-74, 1426.)  The prosecution questioned Brown about the inconsistent prior statements he gave to the police about events on the night of the murders.  (T.p. 1423-26.)  Defense counsel then cross-examined Brown as to his custody status and the immunity deal.  (T.p. 1441-44, 1480.)  Defense counsel also questioned Brown at length about his prior inconsistent statements, including one statement in which he stated that he had been present in the car at the time of the murders.  (T.p. 1429-32, 1440-41, 1444-82.)  Also, because Brown had testified on direct examination about his use of drugs, defense counsel could have elicited testimony about Brown's involvement in the drug culture.  (<u>Id.</u> p. 1421.)

Therefore, the jury had information about Brown's custody status, the charges against him and the pending plea agreement, his prior inconsistent statements, and his history of drug use.  The Court agrees finds this case to be analogous to <u>Mann</u> and believes that the jury had sufficient information to assess Brown's credibility and motives.  <u>See</u> <u>Mann</u>, 622 F. Supp. at 1228-1229; <u>see also</u> <u>Boggs</u>, 226 F.3d at 739.  The Sixth Circuit has stated in a slightly different context that "where undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material."  <u>Williams</u>, 380 F.3d at 977 (citation omitted).  Petitioner's constitutional rights were not violated.  The Court overrules Petitioner's objections and the Twenty-Seventh Ground for Relief is denied.

**ELEVENTH GROUND FOR RELIEF**

**The trial court's denial of Hawkins' Motion for Mistrial based on prosecutorial misconduct**

32

**violated Hawkins' rights under the Fifth, Sixth, Eighth and Fourteenth Amendments.**

In his Eleventh Ground for Relief, Petitioner alleges that his rights were violated when the trial court failed to grant a mistrial based on multiple acts of alleged prosecutorial misconduct. This claim was addressed on the merits in the state courts upon direct appeal and it is amenable to merits review. See Hawkins, 1991 WL 270633, at *2-3 aff'd 66 Ohio St. 3d at 346-48. Petitioner objects as to Magistrate Judge Merz's findings in regards to five specific instances of alleged misconduct and each will be examined here.

"A claim of prosecutorial misconduct . . . will not justify habeas corpus relief unless the prosecutor's conduct was so egregious as to render the trial fundamentally unfair." Roundtree v. Adams, No. 02-1968, 65 Fed. Appx. 26, 2003 WL 1795720, at *2 (6th Cir. Mar. 28, 2003); Angel v. Overberg, 682 F.2d 605, 608 (6th Cir. 1982). This determination is made by examining the totality of the circumstances. See Angel, 682 F.2d at 608. The Sixth Circuit stated:

> In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

Id.; see also Pritchett v. Pitcher, 117 F.3d 959, 964 (6th Cir. 1997) (same). Relief is not to be granted unless the misconduct "likely had a bearing on the outcome at trial in light of the strength of the competent proof of guilt." Byrd v. Collins, 209 F.3d 486, 529 (6th Cir. 2000) (citation omitted). The Sixth Circuit has characterized as "demanding" its standard that "the misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial." See id. at 529-30 (internal quotation and citation omitted). Trial courts have discretion whether to grant a mistrial. See United States v. Atisha, 804 F.2d 920, 926 (6th Cir. 1986).

33

**a. Henry Brown's Alibi.**  The first instance of alleged misconduct relates to the alibi of Henry Brown.  Petitioner contends that the prosecutors withheld the names of Tommicka Washington, Anthony Washington, and Rhonda Calhoun.  Petitioner contends that these witnesses would have contradicted Brown's alibi.  During trial at the guilt phase and the sentencing phase, Brown testified that on the night of the murders he was at the Washingtons' house from 7:30 p.m. or 8:00 p.m. until 12:30 a.m.  (T.p. 1400-02, 2589, 2593-97.)  He also testified at trial that he had lied when he previously had told the police he had been at a party in Lexington Heights that night from 9:30 p.m. until 1:40 a.m.  (T.p. 2575-2577.)

Tommicka Washington, however, testified at the mitigation phase that Brown came to her house at 8:00 p.m. and requested a ride to Lexington Heights.  (T.p. 2609-10.)  She testified that her father, Anthony Washington, and Rhonda Calhoun had been at her house when Brown came over.  (T.p. 2614.)  Tommicka Washington then testified that she took Brown to Lexington Heights and he was not with her at the time of the murders.  (T.p. 2613-17.)  Anthony Washington and Rhonda Calhoun also testified that Brown came to the Washingtons' house for only a brief time and then was taken by Tommicka Washington and Calhoun to Lexington Heights, but each gave slightly different details about the events that night, such as the time that Brown came to the house.  (T.p. 2624-25; 2642-43.)

Petitioner argues that because Brown was the State's key witness, his credibility was critical, and had the defense been able to present this impeachment evidence there is a reasonable probability that the outcome of the trial would have been different.  The state courts concluded on direct appeal that there was not sufficient evidence in the record to support this argument.  See Hawkins, 1991 WL 270633, at *3 aff'd 66 Ohio St. 3d at 347.  Magistrate Judge Merz stated

34

that the impeachment evidence was material in that it could contradict Brown's testimony, but it would "not show that Hawkins was not at the scene of the crime or a participant in the murders." (Doc. #199 p. 31.)  Even if Washington took Brown to Lexington Heights earlier in the evening on the night of the murders, the impeachment evidence would not prove that Brown had not returned to the scene of the murders before they took place.  This impeachment evidence also does not explain or contradict the crucial evidence that Hawkins' bloody fingerprint was found on a notebook in the victims' car or that Hawkins' pager number was found on a sheet of paper in one of the victim's pockets.  The state courts' conclusion that the claim lacked merit was not objectively unreasonable.  See 28 U.S.C. § 2254(D).

      **b. Alleged Jailhouse Confession.**  The second alleged instance of misconduct involved the State's cross-examination of Hawkins with allegedly materially false facts about Hawkins' jailhouse conversations with Keith Miree, a police informant.  Petitioner contends that the following exchange during the State's  cross-examination of him created an impression with the jury that he had confessed to the murders to Miree:

> Q.     Now, did you have an occasion to be – when you were locked up did you have an occasion to have a conversation with an individual by the name of Keith Miree?
> A.     Yes.
> Q.     And did you talk to him about this incident?
> A.     No, sir.
> Q.     You didn't talk to him about this at all?
> A.     I talked to him about my indictment, about not getting an indictment.
> Q.     Did you have an occasion to tell him you, in fact, killed these boys, It wasn't about drugs, it was about money?
> A.     No, sir.
> Q.     You didn't tell him that?
> A.     No, sir.
> Q.     Did you have an occasion to tell Keith Miree you should have killed that young boy too?

A.      No, sir.

Q.      Never told him that?

A.      No, sir.

(T.p. 2185-86.)  Defense counsel immediately objected to the questioning because the State did

not intend to call Miree to rebut Hawkins' testimony.  (T.p. 2186-91.)[10]  After a recess of

approximately 30 minutes, the trial court admonished the jury to disregard the questions asked

by the prosecutor and the answers given by Hawkins regarding the alleged conversation with

Miree.  (T.p. 2197-98.)

The state court of appeals held that the trial court's admonishment preserved the fairness

of the proceedings without the need to call a mistrial.  See Hawkins, 1991 WL 270633 at *3

aff'd 66 Ohio St. 3d at 347-48.  Magistrate Judge Merz concurred.  In his objections, Petitioner

cites to Bruton v. United States, 391 U.S. 123 (1968), for the proposition that improperly

admitted testimony sometimes will be so prejudicial that the jurors will not be capable of

ignoring it despite a curative instruction from the trial court.  In Bruton, one defendant made a

confession that implicated his co-defendant, and the trial court instructed the jury to apply the

confession only against the confessing defendant and not against his co-defendant.  See id. at

124-26.  The Supreme Court stated in Bruton that "there are some contexts in which the risk that

the jury will not, or cannot, follow instructions is so great, and the consequences of failure so

_____

[10]  Miree had given a statement to the police that Hawkins had confessed to him.  (T.p. 2676.)  However, Miree was a risky witness for the State because defense counsel had brought to the prosecutor's attention during pretrial proceedings that Hawkins' stepfather had a tape of a conversation with a man believed to be Miree offering to take a bribe in exchange for favorable testimony.  (T.p. 447-51, 477-84.)  The prosecutor admitted that at the time he asked the questions on Hawkins' cross-examination he was leaning towards not calling Miree as a rebuttal witness, but stated that he did not make up his mind until after Hawkins had testified and the judge had struck the Miree questions from the record.  (T.p. 2677.)

vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." Id. at 135. Magistrate Judge Merz distinguished this case from Bruton on the grounds that the instruction here to disregard the testimony did not require the jury to perform mental gymnastics by permitting the testimony for one purpose but not for another. This Court agrees with that analysis.

This Court also recognizes that the Supreme Court has instructed that "[a] confession is like no other evidence" and "confessions have a profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so [by a trial court]." Arizona v. Fulminante, 499 U.S. 279, 296 (1991) (quoting, in part, Bruton, 391 U.S. at 139-140). Hawkins contends here and in the related Third Ground for Relief, *infra*, that his Sixth Amendment right to confrontation was violated because he was denied the opportunity to cross-examine Miree about the alleged confession when the State did not call Miree as a witness. Violations of the Confrontation Clause of the Sixth Amendment are subject to harmless error analysis. See Jordan v. Hurley, 397 F.3d 360, 363 (2005). "Constitutional error is cause for federal habeas relief only if it has a substantial and injurious effect or influence in determining the jury's verdict." Hill v. Hofbauer, 337 F.3d 706, 718 (6th Cir. 2003) (internal quotation and citation omitted). Relevant factors to consider in this regard are the importance of the witness's testimony, the presence or absence of corroborating evidence, and the overall strength of the State's case. See id.

If Miree, in fact, had testified that Hawkins made a jailhouse confession to him, that would have been important testimony boosting the State's case. Here, the prosecution implied in its cross-examination that such a confession occurred, but the significance of the questioning was

37

blunted immediately by the trial judge's instructions to disregard the questions about Miree.

Also, the State did not call Miree as a witness or present any other corroborating evidence about

the confession.  The absence of corroborating evidence might have caused the jury to question

whether the confession had occurred.  In addition, the overall case establishing Hawkins' guilt

apart from any alleged confession is strong.  That evidence includes the bloody fingerprint found

in the car, Henry Brown's eyewitness testimony, two corroborating witnesses who testified to

hearing gun shots at the approximate time and place that Brown stated he witnessed the murders,

one witness who saw a man fitting Hawkins' description driving a silver-gray sedan shortly after

the witness heard gun shots, testimony concerning the call to a pager that the victims made

before their deaths, and finally the fact that Hawkins' pager number was found in the pocket of

one victim.  The Court is convinced that the Confrontation Clause violation regarding Miree, if

any, was harmless.  The Court holds that the state court's decision that a mistrial was not

necessary under the circumstances is not contrary to or an unreasonable application of clearly

established federal law.

      **c.  Mischaracterization of Testimony and Personal Opinion.**  The next subclaim

involves the State's misconduct by improperly mischaracterizing witness testimony and injecting

personal opinions.  In the first instance, the prosecutor objected on the record that the testimony

of defense witness Deborah Matthew that the police threatened to take her child away from her

unless she told the truth was "incredible."  (T.p. 1946.)  The trial judge immediately instructed

the jury to disregard the observation or comment made by the prosecutor.  (Id.)  In the second

instance, the prosecutor objected on the record that the testimony of Judy Hogan, Hawkins'

mother, that the police told Hawkins that evidence could be planted on him, was "ridiculous."

(T.p. 2051.)  The trial court overruled the prosecutor's objection to the extent that the comment "This is ridiculous" was an objection, and admonished the prosecutor to let the witness testify and offer proper objections if he had any.  (Id.)  The prosecutor did not present evidence to refute either of the defense witnesses' testimony.

On direct appeal, the Ohio Supreme Court stated that the prosecutor's remarks were improper, but that they also were isolated incidents and that no prejudicial error resulted therefrom.  See Hawkins, 66 Ohio St. 3d at 348.  Magistrate Judge Merz concluded that the remarks were isolated, not flagrant, and did not warrant a mistrial.  The Court agrees that the remarks were isolated, but notes that the second comment appears to be deliberate since the prosecutor had already been admonished to avoid such characterizations of the witnesses' testimony.  See Pritchett, 117 F.3d at 964; Angel, 682 F.2d at 608.  Nonetheless, the comments standing alone were not likely to prejudice the defendant or mislead the jury, see ids., because the trial court immediately admonished the jury to disregard the first comment, and rebuked the prosecutor for the second, (T.p. 1946, 2051).  Also, the competent proof establishing Petitioner's guilt was strong as set forth above.  See Pritchett, 117 F.3d at 964; Angel, 682 F.2d at 608.  The comments were not so pronounced as to have permeated the entire atmosphere of the trial.  See Byrd, 209 F.3d at 529.  As such, this Court agrees with Magistrate Judge Merz and the Ohio Supreme Court that the prosecutor's conduct did not warrant a mistrial.

Next, Petitioner contends that he should have been granted a mistrial because the prosecutor mischaracterized the testimony of Kenneth Boehmler during his closing argument and implied that Boehmler was a second eyewitness to the crime.  Boehmler had testified that he heard three sharp noises around 12:30 a.m. on the night of the murders.  (T.p. 1503.)  Shortly

39

after he heard the noises, he saw a man get out of a parked silverish-gray colored car, walk up

the sidewalk, walk back to the car and then drive away.  (T.p. 1499-1505.)  He described the man

as being a black man, about the age of twenty, about 5'9" or 5'10", with slender but muscular

build, and wearing a dark muscle shirt.  (T.p. 1505-06, 1509.)  He also testified that he could not

see the man's face, and he could not identify Hawkins as the man he saw that night.  (Id.)

      During closing argument, the prosecutor stated that Boehmler "describes the man

involved in the killing and puts defendant in that car."  (T.p. 2308.)  That is erroneous to the

extent that Boehmler never testified that he saw Hawkins in the car; rather he stated that the man

he had described, whom he could not identify as Hawkins, had been in the car.  (T.p. 1505-06,

1509.)  However, the prosecutor continued by again referring to the description of the man that

Boehmler had seen and stated that "if that description didn't fit the defendant I never heard a

better one."  (T.p. 2308.)  Also, the trial judge admonished the jury in his closing instructions

that the closing arguments of counsel were not evidence.  (T.p. 2318.)

      The Ohio Supreme Court held on direct appeal that the prosecutor's comments were not

"truly questionable."  Hawkins, 66 Ohio St. 3d at 348.  Magistrate Judge Merz also found this

portion of the claim to be without merit.  This Court agrees.  Taken in context, the prosecutor

was not stating that Boehmler actually saw Hawkins in the car, but rather that he saw a man

whose description matched that of Hawkins in the car.  This was consistent with Boehmler's

testimony during the trial.  Moreover, the jury was admonished not to accept the prosecutor's

closing argument as evidence.  The Ohio Supreme Court decision that the prosecutor's comment

about Boehmler standing alone did not render the trial fundamentally unfair, and is not contrary

to or an unreasonable application of clearly established federal law.

The final alleged instance of prosecutorial misconduct is the prosecutor's insinuation at closing argument about Hawkins' failure to call an expert witness to refute the State's evidence about the bloody fingerprint found on the notebook in the victims' car. The prosecutor asked the jury to look at the two fingerprints while deliberating and stated that "fingerprints don't lie and these two pieces of evidence are unchallenged by the defense." (T.p. 2313.) Defense counsel immediately objected and the trial court sustained the objection and admonished the jury to disregard the prosecutor's statement. (T.p. 2313-14.) The Ohio Supreme Court characterized the prosecutor's statement as "truly questionable," but found that the trial court had acted properly in striking the statement. See Hawkins, 66 Ohio St. 3d at 348. Magistrate Judge Merz came to the same conclusion.

In his objections, Petitioner argues that the prosecutor's statement impermissibly shifted the burden of proof onto him in violation of his due process right to a fair trial. This Court does not agree. The remark was not flagrant because it was isolated, not deliberate, and in context would not have tended to mislead the jury or prejudice Hawkins. See United States v. Carroll, 26 F.3d 1380, 1385, 1387 (6th Cir. 1994). The fact that the trial court gave an appropriate curative instruction is relevant. Also, shortly after the prosecutor's statement in closing arguments, the trial court reiterated that the defendant is presumed innocent and that the State had the burden to produce evidence of guilt beyond a reasonable doubt. (T.p. 2316-17.) This isolated comment cannot be said to have permeated the entire atmosphere of the trial. See Byrd, 682 F.2d at 509.

Accordingly, Petitioner's objections are overruled and the Eleventh Ground for Relief is denied.

**FOURTEENTH GROUND FOR RELIEF**

**The trial court erred in failing to grant Hawkins' new trial motion in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments.**

Petitioner contends that the trial court erred by not granting him a new trial in light of newly discovered evidence.  Petitioner raised this issue on direct appeal.  See Hawkins, 1991 WL 270633, at*3-4 aff'd 66 Ohio St. 3d at 349.  The newly discovered evidence was a .25 caliber gun with a pearl handle, the same caliber of gun that was used to kill Richard and Marteen.  The weapon that was used to kill Richard and Marteen had not been found at the time of Hawkins' trial or thereafter.  Petitioner presented the affidavit of two individuals who stated that in May 1990 Henry Brown, the State's key eyewitness, had given them a .25 caliber gun with a pearl handle to hide, but that they turned the gun over to Hawkins' appellate counsel. (Doc. #17 ex. E.)  At trial, Brown had testified that he did not own a .25 caliber gun and that he had seen Hawkins carry a .25 caliber gun with a pearl handle before.  (T.p. 1418, 1456.)

The newly discovered gun was analyzed by a ballistics expert.  The expert stated that the gun was no longer operable due to the passage of time, the condition of the gun, and the lack of a magazine.  (Doc. #17 ex. E.)  The expert substituted an intact striker so the gun could be fired and testing performed.  (Id.)  The expert tried to perform a comparison, but no identification was possible.  (Id.)  As such, it is impossible to confirm or refute whether the newly-discovered gun was the missing murder weapon.

A trial court has discretion to grant to or deny a motion for new trial.  See United States v. Barlow, 693 F.2d 954, 966 (6th Cir. 1982); Ohio v. Schiebel, 55 Ohio St. 3d 71, 76, 564 N.E.2d 54 (1990).  A new trial should be granted on the basis of newly discovered evidence only

42

if it is likely that the presentation of the new evidence would result in an acquittal.  See United States v. Jones, 399 F.3d 640, 648 (6th Cir. 2005); Barlow, 693 F.2d at 966; Ohio v. Petro, 148 Ohio St. 505, 508, 76 N.E.2d 370 (1975).  Evidence that is to be used merely for impeachment or that is cumulative in nature generally does not provide a sufficient basis to grant a new trial.  See ids.  The strength of the case against the defendant obviously is relevant to a consideration of whether the new evidence would result in an acquittal.  See e.g., Jones, 399 F.3d at 648 (no new trial where evidence of guilt is overwhelming).

The Ohio Supreme Court held that the new evidence that Brown possessed an inoperable firearm five months after trial and almost a year after the murders did not create a strong probability that the result of the outcome of a second trial would have been different.  See Hawkins, 66 Ohio St. 3d at 350.  It also found that Brown's possession of the gun at the later date did not necessarily contradict his trial testimony that he did not own a .25 caliber gun at the time of the trial.  See id.  Finally, it stated that even if the newly discovered weapon was the murder weapon and even if Brown had possession of the murder weapon in May 1990, the new evidence does not explain Hawkins' bloody fingerprint on the notebook in the car nor is it inconsistent with Hawkins' guilt.  See id.  Magistrate Judge Merz found that the new evidence established at most that either before or after trial Henry Brown had possession of a .25 caliber gun.  Magistrate Judge Merz stated that the gun's primary purpose would be to impeach Brown, not prove it was the actual murder weapon, and thus he held that a new trial was not warranted. This Court agrees with the reasoning of the Ohio Supreme Court and Magistrate Judge Merz and holds that the Ohio Supreme Court decision is not contrary to or an unreasonable application of clearly established federal law.

**NINETEENTH GROUND FOR RELIEF**

**The trial court and court of appeals erred in failing to merge the aggravated murder counts and thus skewed the mitigation weighing process in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments.**

Petitioner did not raise this claim on direct appeal or during the post-conviction relief proceedings.  Nonetheless, the Ohio Supreme Court addressed the issue *sua sponte* on direct appeal.  See Hawkins, 66 Ohio St. 3d at 346.  This Court thus will address the issue on the merits as well.

For the murders of each of Richard and Marteen, Hawkins was charged and convicted of two counts of murder: one count charging the offense was committed with prior calculation and design and one count charging felony murder premised upon aggravated robbery.  See id. at 341-42.  Thus, Hawkins was convicted of four counts of murder for killing two people.  The Ohio Supreme Court stated that "we have held that where a defendant is convicted on two aggravated murder counts involving a single killing, the trial court may sentence on only one count."  Id. at 346.  To remedy the problem, the Ohio Supreme Court "declare[d] a merger of the two separate convictions for each killing such that a single death sentence remains for each of the two homicides."  Id.  After merging the separate convictions for each homicide, the Ohio Supreme Court "independently review[ed] the appellant's death sentences for appropriateness and proportionality."  Id. at 351.  The court held that two aggravating circumstances were "clearly shown on the record" and that the one mitigating factor, defendant's age of twenty-one at the time of the murders, was entitled to "very little[] weight."  Id.  It concluded that the aggravating circumstances for each killing outweighed the mitigating factor beyond a reasonable doubt and also noted that it had upheld the death penalty in previous cases of multiple murders.  See id.

44

In his objections, Petitioner contends that the failure of the trial court to merge the aggravated murder counts skewed the jury's mitigation weighing process in violation of Hawkins' constitutional rights. Trial and appellate courts cannot impose a sentence of death under Ohio law if the jury votes for life. See O.R.C. §2929.03. However, if the jury recommends and the trial court imposes a sentence of death, then the appeals court and the Ohio Supreme Court are to review a sentence of death and "independently weigh all of the facts and other evidence disclosed in the record in the case and consider the offense and the offender to determine whether the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors in the case, and whether the sentence of death is appropriate." O.R.C. § 2929.05(A).

In Clemons v. Mississippi, 494 U.S. 738 (1990), the Supreme Court upheld a death sentence where the appeals court had invalidated one or more of the aggravating circumstances found by the jury, but then itself concluded that the remaining aggravating circumstances outweighed the mitigating evidence. See id. at 745-46. The Supreme Court rejected the petitioner's argument that his due process rights were violated because Mississippi statutory law provides only juries with the authority to impose death sentences. See id. at 746. The Supreme Court instructed that if a reviewing court decides to reweigh the aggravating and mitigating circumstances, the court must "give each defendant an individualized and reliable sentencing determination based on the defendant's circumstances, his background, and the crime." Id. at 749.

Following Clemons, the Sixth Circuit has considered and rejected an argument similar to the one made by Petitioner here. See Cooey v. Coyle, 289 F.3d 882 (6th Cir. 2002). In Cooey,

45

the petitioner argued that the Ohio Supreme Court had erred by independently reweighing the

aggravating circumstances and mitigating factors leading to his death sentence. See id. at 888.

The Ohio Supreme Court had determined that the three-judge panel trial court had made several

errors in its weighing process, including a failure to merge the murder specifications. See id. at

889-90. The Ohio Supreme Court further had found, however, that none of the trial court's

errors were plain error. It then independently had determined that the aggravating circumstances

outweighed the mitigating factors after looking at the petitioner's physical and mental history

and his background. See id. at 890-91. The Sixth Circuit held that the Ohio Supreme Court was

permitted to reweigh under Clemons and that it properly considered the Clemons factors during

its reweighing analysis. See id. at 891-92. Accordingly, the Sixth Circuit held that the state

decision was not contrary to or an unreasonable application of federal law, nor was it an

unreasonable determination of the facts in light of the evidence provided in state court. See id.;

cf Fox v. Coyle, 271 F.3d 658, 667 (6th Cir. 2001) (stating that no constitutional claim is stated

when the state's highest court independently reweighs aggravating and mitigating circumstances

without reference to the extra-statutory factor relied on by a trial court).[11]

Under these precedents, the Ohio Supreme Court's decision here to reweigh and its

analysis in reweighing Hawkins' aggravating circumstances and mitigating factors after merging

the aggravated murder counts likewise do not provide a basis to grant the writ. Petitioner's

objections are overruled and the Nineteenth Ground for Relief is denied.

**TWENTY-SIXTH GROUND FOR RELIEF**

---

[11] In light of the binding Sixth Circuit precedent in Cooey, the Court is not persuaded by
Petitioner's citation to a contrary Eighth Circuit precedent in Rust v. Hopkins, 984 F.2d 1486
(8th Cir. 1993).

**The preparation and consideration of the presentence investigation report (which contained victim impact statements and other statements giving opinions on Hawkins and requesting the maximum penalty for him) violated Hawkins' rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.**

In this claim, Petitioner asserts that the preparation of a pretrial report that he had not requested, and its consideration by the trial court, were unconstitutional.  Magistrate Judge Merz held that the claim was procedurally defaulted, and that finding is not challenged by Petitioner in his objections.  Magistrate Judge Merz also held, however, that Hawkins put forth a sufficient cause for his failure to raise the issue on direct appeal or in the post-conviction relief proceedings such that the procedural default might be excused if prejudice is also shown.  See Coleman, 501 U.S. at 749 (setting forth cause and prejudice standard).  In brief, Hawkins was unable to determine the existence or contents of the presentence report in a timely fashion despite efforts to do so.  Thus, the issue is whether Petitioner was actually prejudiced by the presentence report.

The Ohio Revised Code states that a presentence investigation is not to be made in a capital case except upon the request of the defendant.  See O.R.C. § 2929.03(D).  The parties have stipulated that the trial judge requested a presentence report without Hawkins' knowledge.  After conducting an evidentiary hearing on this issue, Magistrate Judge Merz found a "reasonable probability that the trial judge gave at least some weight to the contents of the presentence investigation report in imposing a death sentence on Hawkins."  (Doc. #199 p. 46.)  Magistrate Judge Merz concluded that Petitioner's due process rights were violated by the trial court because Petitioner was denied the opportunity to respond to or defend against the allegations in the report.  See Gardner v. Florida, 430 U.S. 349 (1977).  This finding is also not

challenged by either party in their objections.

However, Magistrate Judge Merz also noted that the jury had recommended death without access to the report.  More importantly, he noted that neither the court of appeals nor the Ohio Supreme Court had access to the presentence report when they did their independent reweighing of the aggravating circumstances and mitigating factors.  See Hawkins, 66 Ohio St. 3d at 351; Hawkins, 1991 WL 270633, at *7-8.[12]  The Ohio Supreme Court identified the two statutory aggravating factors and stated that the only mitigating factor in the record was Hawkins' age of twenty-one at the time he committed the killings.  See Hawkins, 66 Ohio St. 3d at 351.  The reweighing of the aggravating circumstances and mitigating factors by the court of appeals and the Ohio Supreme Court cured any constitutional error by the trial court.  See Hill v. Mitchell, 400 F.3d 308, 335 (6th Cir. 2005) ("Even if a state-law error had occurred, moreover, the Ohio Supreme Court's reweighing of the aggravating and mitigating factors would cure the error . . . .").  Petitioner cannot prove the prejudice necessary to excuse the procedural default. Petitioner's objections are overruled and the Twenty-Sixth Ground for Relief is denied.

---

[12] Petitioner's counsel suggested at the oral argument held on June 29, 2005 that Magistrate Judge Merz only assumed that the court of appeals and the Ohio Supreme Court did not rely on the presentence investigation report in conducting their sentencing reviews.  Counsel did not provide any evidentiary basis for concluding that the reviewing courts had possession of, much less relied upon, the presentence investigation report.  Moreover, the opinion of the Ohio Supreme Court provides no basis to believe that the court took the presentence investigation report into consideration.  See Hawkins, 66 Ohio St. 3d at 351.

## C.  PROSECUTORIAL MISCONDUCT–WITNESSES

**THIRD GROUND FOR RELIEF**

**The cumulative effect of the State's misconduct regarding Keith Miree violated Petitioner Hawkins' rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and prejudiced him.**

Petitioner asserts several related subclaims and objections in regards to the Third Ground for Relief.  One of Petitioner's specific subclaims is that the State's misconduct in cross-examining Hawkins at trial about his alleged confession to Keith Miree, whom the State did not call as a witness, misled the jury, prejudiced Hawkins, and denied Hawkins his right to confront witnesses in violation of the Sixth Amendment.  This subclaim was raised on direct appeal.  The Ohio Supreme Court held it was "arguable" whether the prosecutor committed misconduct, but stated that the trial court took appropriate steps to ensure that no prejudice occurred and that Hawkins was not denied his right to a fair trial.  See Hawkins, 66 Ohio St. 3d at 348.  This Court already has held that with regard to the Eleventh Ground for Relief, *supra*, any violation of Hawkins' Confrontation Clause right was harmless and the state court's decision that a mistrial was not necessary under the circumstances is not contrary to or an unreasonable application of clearly established federal law.  No further analysis is necessary here.[13]

In the next subclaim, Petitioner asserts that the use of Miree as an undercover informant violated his rights.  The issue is whether the State wrongfully elicited the confession after Hawkins' Sixth Amendment right to counsel had attached.  Resolving this issue may be a mere intellectual exercise because Miree did not testify at trial and the implication of an alleged

---

[13] As to the interrelated subclaim that the prosecutor's misconduct induced Hawkins' trial attorney to render ineffective assistance by not cross-examining Miree, the Court holds that Hawkins suffered no prejudice even if counsel was deficient in not cross-examining Miree.

49

confession Hawkins made to Miree was stricken from the record.  Nonetheless, the Court examines the issue on the merits.

In Kuhlmann v. Wilson, 477 U.S. 436 (1986), the Supreme Court analyzed whether the Sixth Amendment was violated by the admission into evidence of a defendant's confession to a jailhouse informant who was placed in close proximity to the defendant but made no effort to stimulate conversation about the crimes charged.  See id. at 456.  The Supreme Court concluded:

> [A] defendant does not make out a violation of [the Sixth Amendment] simply by showing that an informant, either through prior arrangement or voluntarily, reported his incriminating statements to the police. Rather, the defendant must demonstrate that the police and their informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks.

Id. at 459.

Hawkins puts forth the following evidence to support this subclaim:  Sargeant Thomas Boeing of the Hamilton County Sheriff's Office told Miree that he wanted Miree to help the police;  Sgt. Boeing told Miree he could help with Miree's robbery charge; Sgt. Boeing asked Miree how much bond he could afford; Sgt. Boeing told Miree's trial judge that he believed Miree was not involved in the robbery and that he was helping out in a police murder investigation; and the judge lowered Miree's bond.  (Boeing depo. p. 74-78 & ex. 4.)  Also, former Detective Al Schaefer, now Chief Schaefer, of the Mt. Healthy police department testified that he was told that Miree had information from Hawkins concerning where Hawkins hid the gun and that it was arranged for Miree to get out of jail for that testimony.  (Schaefer depo. p. 60.)

These facts may show that Miree was acting as an agent of the police.  However, post-Kuhlmann, Hawkins must demonstrate more to prove a violation of his Sixth Amendment rights.

Hawkins must demonstrate, but points to no facts in the record to demonstrate, that Miree took steps beyond mere listening to deliberately elicit incriminating remarks from Hawkins.[14]  In the absence of such evidence, the Court must conclude that Hawkins' Sixth Amendment rights were not violated by the government's use of Miree as an informant.

Petitioner also submits that the State failed to disclose that it had made a promise of leniency to Miree.  Again, because the questions and answers from Hawkins' cross-examination regarding Miree were stricken and Miree was not called to testify as a witness, evidence of a promise of leniency to Miree is neither exculpatory nor impeaching.  This subclaim fails.

In his final subclaim, Petitioner argues that the State failed to disclose to defense counsel that Hawkins denied making the alleged confession to Miree.  The prosecution must disclose material evidence that is favorable to the accused, either because it is impeaching or exculpatory.  See Strickler v. Greene, 527 U.S. 263, 280-82 (1999); Brady v. Maryland, 373 U.S. 83, 87 (1963).  Magistrate Judge Merz held there was no Brady violation because the evidence, Hawkins' denial, was available to the defense by another source, Hawkins himself.  This Court agrees.  See Spirko v. Mitchell, 368 F.3d 603, 610 (6th Cir. 2004) cert. denied 125 S.Ct. 1699 (2005); Coe v. Bell, 161 F.3d 320, 344 (6th Cir. 1998).

For all of these reasons, Petitioner's objections are overruled and the Third Ground for

---

[14] It is this factor that distinguishes Kuhlmann and the instant case from the precedent cited by Petitioner, United States v. Henry, 447 U.S. 264 (1980).  In Henry, the Supreme Court held that the Sixth Amendment was violated where an informant was paid and acting under instructions from the government, the informant was ostensibly no more than a fellow inmate, and the defendant was in custody and under indictment at the time of his "interrogation" by the informant.  Id. at 270.  The Supreme Court explicitly noted in Henry, however, that it was not addressing the situation where "where an informant is placed in close proximity but makes no effort to stimulate conversations about the crime charged."  Id. at 272 n.9; see also Kuhlmann, 477 U.S. at 456.

Relief is denied.

**TWENTY-FIFTH GROUND FOR RELIEF**

**The State's misconduct re: Henry Brown, the State's chief witness, violated Hawkins' rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.**

Petitioner did not raise all subparts of this claim at trial nor in the post-conviction relief proceedings.[15]  In his post-conviction relief proceedings, Petitioner alleged that the testimony of Henry Brown at trial was perjured.  See Hawkins, 1996 WL 348024, at *4.  The court of appeals held that Hawkins' evidence on this issue did not raise a genuine issue of material fact and that "Brown himself has not wavered in his testimony."  Id.  Magistrate Judge Merz addressed all portions of this claim on the merits and this Court will do the same.

In considering this Ground for Relief, the Court will address each of Petitioner's subclaims and objections in order.  Petitioner asserts that the State violated his rights by not disclosing the full terms of Henry Brown's immunity agreement, by not disclosing that Brown told Melba Marsh, a former prosecutor and now a Hamilton County, Ohio judge, a different version of events than the one he had told the police, and by not disclosing that Brown had failed two polygraph tests administered by the State.

**a.  The Immunity Agreement.**  As to the first issue, Magistrate Judge Merz found no violation of Petitioner's rights on the basis of the numerous instances in the trial proceedings transcript demonstrating that defense counsel, the jury, and the trial court were informed that Brown was testifying under a grant of immunity.  (T.p. 1274, 1426, 1441-47.)  Also, the

---

[15] On direct appeal, Hawkins argued that Brown's juvenile records should have been released and that the records should have been sealed and made part of the records for appeal. See Hawkins, 66 Ohio St. 3d at 346.

immunity agreement was entered as a joint exhibit at trial.  (T.p. joint ex. 1.)  The immunity

agreement states that in exchange for Brown's truthful testimony, "the State of Ohio agrees to

dismiss any and all charges pending against Henry Brown, Jr., and further agrees to forego any

right to proceed against Henry Brown, Jr. on any charge relating to this incident."  (Evid.

Hearing PX 13.)  Thus, the immunity agreement implies that there may have been charges

pending against Brown that were unrelated to the murders of Marteen and Richard.  Hawkins'

defense counsel did not know the nature of the other charges because Brown's juvenile records

were sealed.  The Court in the Twenty-Seventh Ground for Relief, *supra,* held that Hawkins'

confrontation right was not violated by the failure to disclose Brown's juvenile records because

defense counsel was able to sufficiently cross-examine Brown regarding his credibility and bias

without the records.

Likewise, here, the Court holds that the nondisclosure of the fact that Brown received

immunity on a juvenile charge of assault, a crime unrelated to the murders of Marteen and

Richard, did not violate Petitioner's due process rights.  Even if the nondisclosure of this fact

implicated Brady concerns, the nondisclosure does not rise to the level of a constitutional

violation:

> [S]uppression of evidence amounts to a constitutional violation only if it deprives
> the defendant of a fair trial. Consistent with "our overriding concern with the
> justice of the finding of guilt," a constitutional error occurs, and the conviction
> must be reversed, only if the evidence is material in the sense that its suppression
> undermines confidence in the outcome of the trial.

United States v. Bagley, 473 U.S. 667, 678 (1985) (citation omitted); see also United States v.

Jones, 399 F.3d 640, 648 (6th Cir. 2005).  Here, both the prosecutor and defense counsel were

permitted to question Brown about his custody status and the fact that charges against him would

53

be dropped in exchange for his truthful testimony. (T.p. 848, 893, 933, 970, 1274, 1441-44, 1480.) The fact that the jury was not told about the nature of an assault charge which also was dropped as part of the plea agreement does not undermine confidence in the result of the trial.

As to the nondisclosure of then-prosecutor Marsh's interviews with Brown, the Court addresses that subclaim in the related Seventh Ground for Relief, *infra*.

**b. Polygraph Tests.** The fact that the State may have not disclosed the fact that Brown failed polygraph tests does not amount to a constitutional violation under <u>Bagley</u>. It was well-established that Brown told several inconsistent stories before trial. One might expect that Brown would fail a polygraph test knowing that he told inconsistent stories. The State was up-front with the jury during voir dire about Brown's prior inconsistent statements and both the State and the defense questioned Brown about his previous inconsistent statements. (T.p. 178, 215, 334, 516, 1423-26, 1429-32, 1440-41, 1444-82.) The Sixth Circuit has held that the failure to disclose a witness's polygraph report was not reversible error when it did not exculpate the defendant and when the defense was able to cross-examine the witness about prior inconsistent statements through other means. <u>See</u> <u>Hutchinson v. Bell</u>, 303 F.3d 720, 746 (6th Cir. 2002). Additionally, polygraph results are admissible under Ohio law for purposes of impeachment or corroboration only upon stipulation of the parties and with the discretionary consent of the trial judge. <u>See</u> <u>Ohio v. Souel</u>, 53 Ohio St.2d 123, 132-33, 372 N.E.2d 1318 (1978). Petitioner has not established a likelihood that the prosecutor or the trial court would have consented to the admission of the results.

**c. Prosecutorial Vouching.** In his next subclaim, Petitioner alleges that the prosecutor improperly vouched for the credibility of Henry Brown on four specific instances during voir

dire.  (T.p. 178, 215, 335, 516-18.)  "Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the [county prosecutor] behind that witness."  United States v. Francis, 170 F.3d 546, 550 (6th Cir. 1999).  Prosecutorial vouching poses two dangers: (1) the comments can imply that the prosecutor knows of information not presented to the jury that supports the charges against the defendant and (2) the prosecutor's opinion carries the imprimatur of the government and can induce the jury to trust the government's opinion rather than its own judgment.  See United States v. Young, 470 U.S. 1, 18 (1985).  Claims of improper vouching are analyzed under the standards for prosecutorial misconduct discussed at length in regards to the Eleventh Ground for Relief, *supra*.

The Court has examined each of the four instances of alleged misconduct.  At trial proceeding transcript page 178, the prosecutor merely stated that Brown had lied in the past and asked the venire member if the venire member could make a determination as to whether to believe Brown.  At page 215, the prosecutor stated that Brown had told two earlier stories and would tell a third story during his testimony and asked if the venire member could judge whether or not Brown was being truthful.  Neither of these instances constitutes improper vouching.  At page 335, the prosecutor stated that he did not think that Brown would perjure testimony, but stated that it was the venire member's decision whether or not to believe Brown.  Likewise at page 516-18, the prosecutor stated that Brown had told different accounts previously, but that he believed "[Brown's] gonna come in I believe and tell what really happened, okay?"  These latter two statements arguably constitute improper vouching, but defense counsel did not lodge a contemporaneous objection to either.  Under Ohio law, defense counsel's failure to object in a

timely manner to the alleged instances of prosecutorial misconduct results in a waiver of all but plain error.  See Ohio v. Lott, 51 Ohio St. 3d 160, 167, 555 N.E.2d 293 (1990).

This Court finds that these arguable instances of vouching were not flagrant under the Sixth Circuit standard, because they were isolated, not deliberate, and not likely to prejudice the defendant or mislead the jury.  See Carroll, 26 F.3d at 1388.  The comments were not deliberate when taken in context because the prosecutor stressed repeatedly that Brown had lied before and that the jury would have to use its judgment to decide whether to believe him.  Moreover, the strength of the total evidence against Hawkins apart from these statements was strong.  See id. In sum, the prosecutor's statements were not so egregious to have constituted plain error or rendered the entire trial unfair.  See Roundtree, 2003 WL 1795720, at *2; Angel, 682 F.2d at 608.

**d.  Perjury.**  In another subclaim, Petitioner argues that the prosecutors suborned perjury by not correcting the false impression of the facts created by Brown's false trial testimony. When a state allows false evidence to go uncorrected, a conviction obtained through the use of that false evidence violates the Fourteenth Amendment and cannot stand.  See Napue v. Illinois, 360 U.S. 264, 269 (1959).  Factual predicates for this subclaim include that the testimony or evidence is false, the prosecution knew it was false, and the false evidence or testimony was material.  See Workman v. Bell, 178 F.3d 759, 766 (6th Cir. 1998).  The evidence in this record does not prove either that Brown's trial testimony was false or that the State knew it was false. Petitioner points only to the facts that Brown told different stories to different people at different times, and that the prosecutor stated during voir dire that he could not be sure what Brown's testimony at trial would be.  These facts do not establish that Brown's trial testimony was untrue

56

or that the State had reason to know it was untrue.[16]

In sum, Petitioner's objections are overruled and the Twenty-Fifth Ground for Relief is denied.

## D.  PROSECUTORIAL MISCONDUCT–EVIDENCE

**FOURTH GROUND FOR RELIEF**

**The State's misconduct regarding the bloody fingerprint violated Petitioner Hawkins' rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.**

In this Ground for Relief, Petitioner asserts that the State failed to disclose material and exculpatory information about the partial fingerprint set in blood on the notebook found in Richard's car.  Petitioner did not raise this claim on direct appeal or in the state post-conviction relief proceedings.  Magistrate Judge Merz nonetheless denied the unexhausted claim on the merits as he was permitted procedurally to do pursuant to 28 U.S.C. § 2254(b)(2) ("An application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the administrative remedies available in the courts of the State.").

As to the factual background of this claim, the evidence in the record indicates that the notebook cover containing the partial fingerprint set in blood was taken to the Miami Valley Crime Lab ("MVC Lab").  However, there is a dispute in the record as to whether the MVC Lab

---

[16] The Court disagrees with Petitioner's assertion that Brown testified at the evidentiary hearing in this matter that he had lied at Hawkins' trial.  Although Brown's testimony at the evidentiary hearing was markedly different from his trial testimony and he appeared to exonerate Hawkins of the crimes, Brown also stated during the evidentiary hearing that he told the truth at Hawkins' trial as he knew it at the time.  (Evid. Hearing p. 478-81.)

tried and failed to raise or lift the bloody partial print.[17]  The record contains a "Divisional

Commendation" for Michael Suder, a former crime scene investigator for the Hamilton County

Sherriff's Office, arising from his work on the Marteen and Richard murders which states that

Suder was able to develop a bloody print "after attempts to raise the same by use of a laser were

unsuccessful by the Miami Valley Crime Lab."  (Evid. Hearing ex. PX5.)  However, Suder

testified at the evidentiary hearing held by Magistrate Judge Merz that the MVC Lab tried

unsuccessfully to raise two different prints that were found on the notebook, but that he did not

permit the MVC Lab to "mess[ ] with" the bloody print.  (Evid. Hearing p. 32-33.)  He testified

similarly in his earlier deposition in these habeas proceedings.  (Suder depo. p. 64.)  Suder also

testified at the evidentiary hearing that the two other prints that were originally found on the

notebook were destroyed in the process of trying to enhance them by laser at the MVC Lab.

(Evid. Hearing p. 40-41.)  He stated that he was engaged in an "informal exercise" when he took

the prints to the MVC Lab.  (Evid. Hearing p. 62.)

    A former clerical worker at the MVC Lab confirmed at the evidentiary hearing that the

lab had laser technology in 1989 to analyze fingerprints.  (Evid. Hearing p. 69.)[18]  She also

testified that upon subpoena she searched for records concerning the MVC Lab's testing of the

prints found in Richard's car, but that no records could be found.  (Id. p. 71-72.)  She testified

that a lab sheet, a routing sheet, and a lab report would have been created in regards to the

---

[17] To raise a print is to enhance it.  To lift a print is to put a plastic lifter over the print and
lift it off of the original surface for analysis.  (Evid. Hearing p. 38.)

[18] Magistrate Judge Merz relied on the trial testimony of Suder or Alderucci to conclude
that the MVC Lab did not have laser technology at that time.  Suder testified at trial that the FBI
used a laser light and that an unidentified lab in Dayton used "omni light, which is a colored
light."  (T.p. 1583.)  Alderucci also testified that the FBI used laser light.  (T.p. 1670.)

evidence when an outside agency requested testing.  (Id. p. 68.)  However, she also admitted that she would not have known if a MVC Lab technician made an informal arrangement to do testing but did not complete the necessary paperwork.  (Id. at 75-76.)

The State does not dispute that it did not disclose that the bloody print was taken to the MVC Lab.  Petitioner contends that the fact that bloody print was taken to the MVC Lab amounted to a break in the chain of custody.  Petitioner argues that this was against an order from the Hamilton County Sherriff's Detective Boeing dated June 26, 1989 to put the prints in the safe to hold for court.  (Evid. Hearing PX6.)  However, the Court does not believe this amounts to a "break" in the chain of custody.  Suder testified at the evidentiary hearing that the bloody print remained under his direct supervision even when the notebook was taken to the MVC Lab.  (T.p. 32-33.)  He also testified that he probably took the prints to the MVC Lab on June 16, 1989, prior to the date of the Sgt. Boeing order to keep the prints in the safe.  Id. Finally, Petitioner suggests that there was a break in the chain of custody because there is inconsistent evidence from the serologist and Suder about whether the blood from the print was tested by the coroner before or after Suder "lifted" the print.  (T.p. 1631; Doc. #67, ex. B at Bates 474, 599.)  However, any such  inconsistency was made evident by the trial testimony and does not demonstrate the State's failure to disclose material evidence.  (T.p. 1608, 1630-31, 1684-85, 1698-99.)

As to Petitioner's next subclaim, the Court will assume *arguendo* that the MVC Lab did try unsuccessfully to raise the bloody print with a laser, and not just the other two prints found on the notebook.  Petitioner argues that the failure to disclose this attempt prejudiced him and affected the outcome of trial.  He states that his Sixth Amendment rights were violated because

had he known the bloody print underwent testing at the MVC Lab, he would have cross-examined Suder about the laser testing and the quality of the bloody print.  He also would have called MVC Lab personnel to testify.  He contends that the lack of records from the MVC Lab verifying the type of testing done on the print would have raised questions in the jury's mind about the quality of the fingerprint evidence.

Additionally, Petitioner contends that the State did not disclose other evidence which calls into question the integrity of the prints.  Suder testified at trial that he attempted to lift the bloody print only once.  (T.p. 1620.)  However, he testified at his deposition in these habeas proceedings that he attempted multiple times to lift the print because "[i]t did not lift real well." (Suder depo. p. 64.)  If too many attempts are made to lift a print, the identifiable characteristics of the print can be destroyed.  (Id. p. 65-66; cf. T.p. 1628.)  Also, Suder testified for the first time during these habeas proceedings that he put the bloody fingerprint in a refrigerator to help add moisture after he had already identified the print.  (Evid. Hearing p. 23-26.)  Refrigeration can be used to help raise or enhance the print.  (Id. p. 38.)  Contrary to Petitioner's insinuations, this evidence does not establish or render probable that the bloody print here was damaged or destroyed.

The State's failure to disclose the above information does not amount to a Brady violation because the potential evidence is not material.  See Strickler, 527 U.S. at 280 (evidence must be material); Payne v. Bell, 399 F.3d 768, 785 (6th Cir. 2005) (same) rehearing granted on other grounds 2005 WL 481606 (6th Cir. Feb. 8, 2005).  Evidence is material only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  Payne, 399 F.3d at 785 (quoting Bagley, 473 U.S.

at 682). Here, there is no reasonable probability that the result would have been different even if the State had disclosed the evidence discussed above because none of the evidence directly impeaches or contradicts the positive print identifications made.

Suder, the crime scene investigator, testified at trial that he used a black carbide powder to lift the prints from Richard's vehicle and from the notebook found inside Richard's vehicle. (T.p. 1583, 1607.) He identified the latent print found on the car door panel and the bloody partial fingerprint found on the notebook as matching the fingerprints of Hawkins. (T.p. 1590, 1593, 1596.) Detective Peter Alderucci and Specialist Dan Jones verified the prints as matching the prints of Hawkins. (T.p. 1632-33, 1645-46.) Suder also testified that an expert retained by Hawkins' defense counsel prior to trial also examined the chart of the prints prepared by Suder. (Evid. Hearing p. 49-50.) The fact that other attempts were made to raise and lift the print does not impeach the conclusions reached by the experts. Rather, it is evident from the testimony of Suder and Alderucci that the partial print was not materially damaged or destroyed because both men were able to make a positive identification.

In a separate subclaim, Petitioner contends that the State failed to disclose to defense counsel that there was conflicting testimony concerning the total number of identifiable points on the prints identified to match those of Hawkins. As to the latter contention, Suder testified to the grand jury that the two prints he identified as matching Hawkins' prints each had 12 or 13 identifiable points. (Evid. Hearing ex. PX7, grand jury T.p. 17.) His trial testimony was slightly different. He testified at trial that the bloody print from the notebook had 14 identifiable points and the car door print had 10 identifiable points. (T.p. 1592, 1597.) Other documents disclosed in discovery here state, however, that the car door print had only 8 identifiable prints and the

61

notebook print had 17 identifiable points. (Doc. #67 ex. B at Bates 19, 1411.) The State's

failure to disclose these apparent discrepancies does not constitute a <u>Brady</u> violation, however,

because the discrepancies were not material. Only seven identifiable points are needed for an

accurate match and it is undisputed that the prints here each had more identifiable points than

seven. (T.p. 1592.) Also, Suder testified at the evidentiary hearing that he did not chart every

identifiable point for use in testimony; he testified that he always "left a few spares." (Evid.

Hearing p. 41-42.) There is no reasonable probability that these minor discrepancies would have

changed the outcome of trial.

Finally, Petitioner argues that the reliability of all of the prints is in question. His

argument is based in part on the fact that two other partial prints found on the notebook were

destroyed during attempts to enhance them at the MVC Lab. (Evid. Hearing p. 40-41.) The

Court agrees with Magistrate Judge Merz that this evidence is not material because the partial

prints were of no value before the attempts to enhance them were made. Petitioner also argues

that the State failed to disclose conflicting evidence regarding whether the partial print in blood

was a patent print or a latent print and the total number of prints developed by Suder. A patent

print is a visible print. (T.p. 1585.) A latent print is a hidden print made by secretions from the

glands. (T.p. 1584-85.) Suder testified at trial that, to the best of his memory, he found a total of

10 identifiable prints. (T.p. 1603; Suder depo. 47.) Suder also testified at trial that the print

found on the notebook later identified as matching Hawkins' print was a patent print. (T.p.

1593.) Discovery documents obtained from State criminal authorities state that there were either

10 latents prints found or 9 latent prints plus one patent print, with the patent print being one of

two prints found on the notebook. (Doc. #67 ex. B at Bates 1685, 1844, 1883-50, 1883-82.) The

Court does not find these minor inconsistencies to be material.  Petitioner was not denied a fair

trial on account of any issue regarding the prints and the State's actions and inactions do not

undermine this Court's confidence in the outcome of the trial.  See Bagley, 473 U.S. at 678.

Petitioner's objections are overruled and the Fourth Ground for Relief is denied.

**SEVENTH GROUND FOR RELIEF**

**The prosecutor's failure to provide Hawkins' counsel with material and exculpatory
evidence violated his rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth
Amendments to the United States Constitution.**

Petitioner states several groups of subclaims here.  In the first set of subclaims, Petitoner

contends that the State failed to disclose Brady material regarding the following alleged

alternative suspects for the murder: Henry Brown, Howard Johnson, and Robbie Burns.  In order

to show a Brady violation for failure to disclose exculpatory or impeaching evidence, Petitioner

must prove: (1) the evidence was favorable to Hawkins, (2) the evidence was material in that

there is a reasonable probability that had the evidence been disclosed to the defense the result of

trial would have been different, and (3) the evidence that was suppressed was known to the

prosecution, but not the defense, at the time of trial.  See Payne, 399 F.3d at 785.  Brady material

can include evidence that would inculpate another in the commission of a crime for which a

defendant is charged.  However, Brady does not require the State to turn over inculpatory

material regarding a potential suspect if the State also has substantial exculpatory evidence to

conclude the person was no longer a suspect.  See Coe v. Bell, 161 F.3d at 345 n.4.

Many of the arguments concerning Henry Brown are duplicative of arguments made in

connection with the Eleventh, Twenty-Fifth, and Twenty-Seventh Grounds for Relief, *supra*, and

as such, these arguments will not be addressed here again.  Other subclaims in this Ground for

Relief overlap with the Twenty-Third Ground for Relief, *supra*, wherein Petitioner alleges that the trial court erred by denying his motion to compel discovery or to have the police turn over their investigative file. The Court will analyze the merits of the related Grounds for Relief together.

     **a. Evidentiary Material Regarding Henry Brown.** The Court begins with the State's failure to disclose one set of evidentiary materials concerning Henry Brown that Petitioner obtained during discovery in this matter. One document, obtained from the Mt. Healthy police department, is a Henry Brown juvenile court order authorizing Brown to be fingerprinted and photographed because there was probable cause to believe he was involved with double homicide. (Doc. #67 ex. B at Bates 1626.) Other police records stated that Brown "confessed to being part of the offenses." (Doc. #151, ex. C-1 at 14, ex. C-2 at 14.) Even if these records are determined to be material under Brady, the failure to disclose the records did not give rise to a Brady violation because Hawkins was not prejudiced by the failure. Defense counsel knew and the parties presented the jury with evidence at trial that Brown was originally charged in connection with the murders, that he was being held in custody at the time of Hawkins trial, and that he was being given immunity for his trial testimony. (T.p. 848, 893, 933, 970, 1273-74, 1423-26, 1441-44, 1480.) The evidentiary materials Petitioner cites in support of this subclaim add nothing new to what already was known. This subclaim fails on the merits.

     Petitioner also cites to a sworn affidavit dated October 17, 1994 by an Anthony Caine in which Caine states that Brown told him after the homicides that Johnson was involved in the murders. (Doc. #17, ex. NN, attachment A.) Caine also stated that Brown did not state that Hawkins was involved. The Court does not find this 1994 affidavit to be relevant to these

Grounds for Relief because there is no evidence that the State was aware of Caine's statement at or before the time of the trial which occurred in 1989.

      **b. Evidentiary Material Regarding Howard Johnson.**  In another subclaim, Petitioner contends that the State withheld evidence pertaining to the alternative suspect, Howard Johnson. Petitioner cites to a statement taken from Johnson on June 12 or 16, 1989 by the Hamilton County Sheriff's Department largely concerning the pagers that Johnson had obtained from his girlfriend and one of which he gave to Hawkins.  (Doc. #67 ex. B at Bates 13-14.)  Johnson permitted the police to photograph and fingerprint him at that time.  (<u>Id.</u>)  Johnson denied any knowledge of or involvement in the double homicide.  (<u>Id.</u>)  He told the police at that interview that he had not seen Hawkins since June 5, 1989 because he had been staying with his sister since June 9, 1989.  (<u>Id.</u>)  On June 17, 1989, in a transcribed statement, Johnson told the police that he had been staying with his sister since June 9, 1989 and that he had not seen or talked to Hawkins since June 6 or 7, 1989.  (Doc. #151, ex. C-7 at 2, 7-9.)  Petitioner argues that the these statements contained evidence favorable to Hawkins because Johnson gave numerous and inconsistent alibis.  The Court has reviewed the interview reports and does not agree that Johnson made any material inconsistent statements to the police such that the State was required to disclose this evidence as <u>Brady</u> material.

      Petitioner also cites to the fact that during the June 17, 1989 interview, Johnson speculated that the murders did not occur in the place where the vehicle with the bodies were found.  (Doc. #151, ex. C-7 at 11.)  Johnson stated that the area in Mt. Healthy where the bodies were found was a peaceful area where people would call the police if they suspected mischief. (<u>Id.</u>)  He also indicated that he heard on the street that Richard's body was found in the backseat

and he speculated that Richard knew the person who killed him or else he would not have gotten out of the front seat and moved into the back seat of the vehicle where he would be at a disadvantage. (Id. ex. C-7 p.12-13.) Petitioner contends that these statements were inconsistent with another statement Johnson made to the police on June 19, 1989 that he knew nothing about the murders. (Doc. #67 ex. B at Bates 20.) Again, the Court disagrees with Petitioner's characterization of this evidence. Taking the portions of the statement Petitioner relies on in context it was not inconsistent for Johnson to deny personal knowledge of the murders after he previously speculated about the nature of the murders based on information he had heard. The material is not exculpatory and the prosecution was not required to disclose it.

     **c. Evidentiary Material Regarding Robbie Burns.** Next, Petitioner contends that the State withheld evidence that Robbie Burns was a suspect. In particular, Petitioner contends that the State suppressed a June 23, 1989 interview with Burns that was material and exculpatory to Hawkins. (Doc. #67 ex. B at Bates 1457-74, 1921-22.) Petitioner does not explain how Burns' statement incriminated Burns or how it was exculpatory of Hawkins. The materiality of the evidence is not apparent to the Court. The subclaim fails for lack of cogency, or alternatively, on the merits.

     **d. Blood and Physical Evidence.** In the next subclaim, Petitioner alleges that the State suppressed that a sample of blood found in Richard's Hyundai near the driver's side footrest was a shoe print in blood. One police investigation report stated that the carpeting on the front driver's side had been tentatively tested as containing blood and that "[t]his would indicate that someone stepped into that side of the vehicle with blood on the bottoms of their shoes." (Doc. #67 ex. B at Bates 36.) Petitioner contends that this evidence is exculpatory and should have been disclosed

66

because Hawkins' shoes found at his house tested negative for blood.  Magistrate Judge Merz denied this claim, holding, in essence, that trial testimony made evident that the blood stain in question likely had come in contact with a shoe.  Jeff Schaefer, a specialist with the Hamilton County Coroner, testified at trial that he tested a stain of blood found on a footrest to the left of the brake pedal "where you can rest your left foot as you are driving" and where "your left foot would come to rest."  (T.p. 1711, 1712.)  Schaefer likewise testified that Hawkins' shoes seized from his home tested negative for blood.  (T.p. 1741-45.)  The Court finds that even if the particular investigation report was material and exculpatory, the State's failure to disclose the report did not prejudice Petitioner at trial.

Petitioner also alleges that the State withheld physical evidence that contradicted Henry Brown's trial testimony.  Brown testified at trial that when he approached Richard's car he saw Marteen "just laying to the side" and not moving in the driver's seat.  (T.p. 1405.)  Petitioner asserts that if this testimony were truthful, the police should have found blood spatterings on the driver's side window and a bullet hole in the driver's seat headrest.  Petitioner asserts that the State did not disclose investigation reports that indicated, to the contrary, that blood spatterings were found on the front passenger side window.  (Doc. #151 ex. C-3 at 2; id. ex. C-5 at 2.)  However, at trial, Jeff Schaefer did testify for the State that a projectile was taken from the front passenger's headrest. (T.p. 1718.)  Again, assuming the police investigation report to have been Brady material, Petitioner was not prejudiced by the State's failure to disclose the evidence because the jury heard testimony at trial about physical evidence that appears to contradict Brown's testimony in the same manner as the police report.

**e. Gun Box.**  Petitioner's next claim involves a gun box admitted as an exhibit at trial.  The

gun box had been seized during a police search of Hawkins' home after the murders. The serial

number on the gun box matched the serial number of a .25 caliber gun the police had seized from

Hawkins in 1988 during a prior arrest. That gun was in police custody at the time of the murders.

Preliminarily, it must be noted that the State did not violate <u>Brady</u> by suppressing the fact that the

.25 caliber gun from the gun box was in police custody at the time of the murders because Hawkins

had personal knowledge of these facts. <u>See</u> <u>Spirko</u>, 368 F.3d at 610 (holding there is no <u>Brady</u>

violation when the evidence is available to the defendant by another source); <u>Coe</u>, 161 F.3d at 344

(same). The State used the gun box exhibit at trial to support its theory that a .25 caliber gun, the

type of gun used to kill Richard and Marteen, was Hawkins' "weapon of choice." (<u>See</u> <u>e.g.</u> T.p.

1271-72, 2309.)

The Court is satisfied that upon examination of the entire trial transcript taken as a whole

the State did not violate Hawkins' rights by misleading the jury about the gun box and the two

guns. The most troubling testimony was given by Shawn Brown, Henry Brown's sister, that she

had seen Hawkins with a gun matching the diagram of the .25 caliber gun stored in the gun box in

or about May 1989. (T.p. 1368-70.) A juror might have misunderstood Shawn Brown to be

testifying that she had seen Hawkins with the gun originally stored in the gun box. That would

have been impossible as the gun from the gun box was in police custody.

Elsewhere during the trial, however, it was made clear that the gun box was not the box for

the murder weapon. In opening statements, the State informed the jury that the police had found a

gun box for a .25 caliber gun during a search of Hawkins' home. (T.p. 1271.) At that same time,

the State disclosed that the box "was not the box for the murder weapon." (T.p. 1271-72.)

Hawkins himself testified at trial that the gun originally stored in the gun box had been seized by

68

the police in 1988 at the time of a prior arrest.  (T.p. 2104-06.)  Later, the defense called Richard

Duwel, a Hamilton County evidence custodian, who testified that the gun with a serial number

matching that of the gun box had been in police custody since 1988.  (T.p. 2229-30.)  In closing

argument, the prosecutor attempted to explain that the import of Shawn Brown's testimony was

simply that Hawkins had purchased a second gun after the time the police had seized the gun from

the gun box.  (T.p. 2308-09.)  He also stated plainly that the gun box did not contain the murder

weapon, and that the gun box and two .25 caliber bullets found during the search of Hawkins' home

were offered to support the State's theory that a .25 caliber gun was Hawkins weapon of choice.

(T.p. 1538-39, 2308-09.)  The Court finds that the State did not suppress material evidence nor

violate Hawkins' rights in regards to the gun box.

     **f.  Withheld Statements.**  In the next subclaim, Petitioner contends that the State withheld

and continues to withhold statements taken by the prosecutor's office, specifically:  (1) notes from

Henry Brown's three interviews with prosecutors, (2) a statement written and signed by Henry

Brown and (3) a statement signed by Robbie Burns.  Former prosecutor Melba Marsh testified in

discovery in these habeas proceedings that she spoke to Henry Brown two times and that he made

statements to her which were inconsistent with those he made to the police.  (Marsh depo. p. 13-14,

21.)  A different assistant prosecutor testified that in response to a subpoena he was unable to locate

prosecutorial files concerning Henry Brown apart from those in the Hawkins' case.  (Breyer depo.

p. 15, 17-19, 26.)  Brown testified at trial that he talked to prosecutors three times and that his trial

testimony was consistent with what he had told the prosecutors.  (T.p. 1425-26.)

     These subclaims cannot succeed because Petitioner has not established that Brown's or

Burns' statements to the prosecutors would have contained exculpatory or impeaching material

evidence.  The Court recognizes that Petitioner may be hampered in this regard if the files from the prosecutor's office on Brown are missing.  Even so, the State's failure to preserve this evidence does not constitute a denial of due process unless the State acted in bad faith by misplacing or losing the files.  See Arizona v. Youngblood, 488 U.S. 51, 55 (1988).  Petitioner does not attempt to establish bad faith.  Also, even if Brown made additional inconsistent statements to the prosecutors, such additional impeaching evidence would likely be cumulative, and therefore not material.  See Williams, 380 F.3d at 977 (additional cumulative evidence not material when a witness's credibility has already been subject to extensive attack).  The Court discussed in the Twenty-Seventh Ground for Relief, *supra*, the extensive attack defense counsel made against Brown's credibility and motives.  As for Burns, there is no reason for the Court to assume that Burns' statement would have contained material exculpatory evidence that the defense could not have obtained from Burns himself.  The defense called Burns as a witness to help establish an alibi for Hawkins.  (T.p. 1873 *et seq.*)  The State tried to impeach Burns because he testified at trial that Hawkins left his house at 11:30 p.m. on the night of the murders, but told the police, and apparently the prosecutors, that Hawkins left at 12:30 a.m.  (T.p. 1881, 1892-93.)  These subclaims fail for lack of proof on the merits.

   **g. Phone Calls.**  Petitioner next asserts that the State failed to disclose material evidence concerning the phone call one of the victims, Richard, made the night of the murders.  At trial, a State witness testified that Richard and a friend stopped by her house around 10:30 p.m. on the night of June 11, 1989, used the telephone to dial a pager, waited approximately 15 minutes for the return call, and then talked to a person who called the house.  (T.p. 1351-54.)  This testimony supported the State's theory that Richard had called Hawkins' pager to set up a drug deal.

Petitioner asserts that the State suppressed evidence that Richard instead had called his girlfriend at approximately 10:30 p.m. on June 11th.[19] A police investigation report contains a statement by Ed Berger, a friend of Richard, who stated that he called Richard's girlfriend at approximately 10:30 p.m. on the June 11th. (Doc. #151 ex. C-8 at 1; id. ex. C-9 at 6.) Berger heard a call waiting beep during their phone conversation and Richard's girlfriend said that Richard was on her other line after she had clicked over. Ids. The Court finds that this evidence based on Berger's secondhand knowledge is not material. It does not directly contradict that Richard made a telephone call to a pager because he could have called his girlfriend from a different location before or after the pager call.

**h. Time and Place of the Murders.** Next, Petitioner contends that the State suppressed contradictory evidence about the time and place of the murders. At the trial, Henry Brown testified that he saw Hawkins shoot Richard at approximately 12:30 a.m. and Keith Boehmler testified that he heard what sounded like gunshots in the same area around 12:30 a.m. (T.p. 1402-03, 1503.) Non-disclosed grand jury testimony and police reports contain accounts that vary from the trial testimony. A police officer testified before the grand jury, apparently based at least in part on Henry Brown's and Keith Boehmler's statements, that the murders occurred at approximately 1:00 a.m. (Evid. Hearing PX 7 p.33, 36.) A police investigation report states that an officer interviewed several people in the neighborhood who did not report hearing any noises, one person who heard what he described as four "raps or knocks" at approximately 12:15 a.m. to 12:30 a.m., and one person who heard a "commotion" and moaning noises around 12:00 a.m. (Doc. #151, ex. C-4 at 1-

---

[19] Petitioner also states without citation to the record or any evidentiary material that Richard might have called Robbie Burns at 10:30 p.m. about a drug deal. This part of the subclaim fails for lack of cogency.

2.) Another person stated that she saw a silver car at 10:30 p.m. on June 11th and again on the morning of June 12th, but that nobody was in the vehicle. (Id.) The discrepancies in the time of the murders are insignificant and the statement about the silver car is too vague to be material. The Court does not believe that there is a reasonable probability that the result of the trial would have been different if this evidence was disclosed.

     **i. Victims' Pockets.** Finally, Petitioner asserts that the State suppressed evidence that the victims' pockets had not been turned inside out. The evidence that Marteen's pockets were turned inside out supported the robbery charge and an aggravated murder specification that the murders occurred pursuant to a robbery. Two officers testified at trial that Marteen's pockets were turned inside out. (T.p. 1530-31, 1570.) However, Petitioner cites to investigation reports completed by the officers in which neither made any comment about Marteen's pockets. (Doc. #151, ex. C-5 and C-21.) The Court finds that this issue is not material under Brady. The Court will not draw an inference about the condition of the pockets from the silence of the investigation report. Moreover, the condition of the pockets was not the sole evidence supporting the robbery charge and specification. The State also presented evidence that Richard and Marteen had been carrying a large sum of cash and that Marteen had been wearing several rings on the night of the murders, all of which were missing when the bodies were discovered. (T.p. 1313, 1317, 1327, 1347-49, 1530-31, 1570, 1640.)

     The Court overrules Petitioner's objections and the Seventh Ground for Relief is denied.

**FIFTEENTH GROUND FOR RELIEF**

**Hawkins was denied rights under the Fifth, Sixth, Eighth and Fourteenth Amendments due to prosecutorial misconduct and deficient and prejudicial representation he received throughout trial.**

Petitioner did not raise the subclaims stated in the Fifteenth Ground for Relief in his direct appeal, but did raise it as the forty-eighth claim for relief in the state court post-conviction relief proceedings.  The trial court held that the forty-eighth claim was barred by the doctrine of *res judicata*.  (Doc. #17 ex. OO p. 36.)  The court of appeals affirmed.  See Hawkins, 1996 WL 348024, at *5.  As stated above, *res judicata* is an adequate and independent state law procedural ground for upholding a conviction.  See e.g., Frazier, 343 F.3d at 805; Buell, 274 F.3d at 349. Thus, Magistrate Judge Merz was correct to conclude that the subclaims in this Ground for Relief are barred by procedural default.

In his objections, Petitioner argues that the ineffectiveness of his appellate counsel for failing to raise the issues on appeal constituted sufficient "cause and prejudice" to excuse any procedural default.  Petitioner asserted the ineffectiveness of his appellate counsel in regards to the subclaims herein in his Motion for Reconsideration to the Ohio Supreme Court and in his Ohio R. App. P. 26(B) Application to Reopen.  (Doc. #17 ex. WW p. 11; id. ex. CCC p. 8, 10.)  The Ohio Supreme Court denied the Motion for Reconsideration without stating its reasons and the Ohio court of appeals later denied Hawkins' Application as untimely.  (Id. ex. YY & GGG.)

The issue is therefore whether appellate counsel was deficient for not raising on appeal the fact that trial counsel were deficient for not objecting at trial to the alleged instances of prosecutorial misconduct.  "To demonstrate cause for the procedural default, [Hawkins] must show that both his trial counsel and his appellate counsel were ineffective."  Richey, 395 F.3d at 679. The Court now will examine each of the instances in which Petitioner contends his trial and appellate counsel were ineffective.

First, Petitioner contends that Shawn Brown gave hearsay testimony on trial proceeding transcript page 1372.  The Court does not find any hearsay testimony on that page.  Second, Petitioner contends that Mike Suder, the crime scene investigator, gave perjured testimony at trial when he testified that he "believed" he compared the unidentified fingerprints taken from the victims' car to the fingerprints of Howard Johnson.  (T.p. 1598.)  Petitioner asserts that this testimony was false because the police investigation reports, which have been subsequently produced, do not affirmatively state that any fingerprints taken from the car were compared to Johnson's prints.  (Doc. #151 ex. C-1, C-8, C-10, C-12, C-20, and C-21.)  The police investigation reports cited by Petitioner do not purport to provide a definitive list of those to whom the fingerprints were compared.  This subclaim fails because Petitioner has not established that Suder's testimony was false or that the State should have known it was false.

Next, Petitioner contends that counsel was negligent for not objecting when the prosecutor improperly belittled witnesses during cross-examination, including when Steve Brown and Howard Johnson were asked about their drinking and/or drug use, (T.p. 1853, 2000, 2003-04, 2009), and when Shannon Calkins was asked about drug use and her sex life, (T.p. 1972-74, 1986).  The Court, having reviewed the transcript, finds that in only one instance were the prosecutor's questions suspect, and defense counsel made a contemporaneous objection to that question which was sustained.  (T.p. 2000.)  The Court concludes that it cannot be said that appellate counsel was "scarcely functioning as counsel at all" by not raising this issue on appeal.  See McMeans, 228 F.3d at 682.

Next, Petitioner contends that defense counsel should have objected at trial and on appeal to specific statements that the State made in closing arguments.  Most of Petitioner's arguments in this

regard are not stated with sufficient cogency for the Court to find that appellate counsel was ineffective. First, Hawkins refers to the State's statement that purpose could be determined by the manner of the killing. (T.p. 2265). 4 Ohio Jury Instructions 409.01 states that purpose can be determined by the manner by which an act is done, the means used, and all other considerations. Second, Hawkins refers to the State's characterization of the "prior calculation" requirement. (T.p. 2266). It was not inconsistent with the prior calculation instructions found in 4 Ohio Jury Instructions 503.01. Finally, the Court is satisfied that none of the specific statements rendered the trial fundamentally unfair. Trial counsel were not deficient for not objecting at trial and appellate counsel was not deficient for not raising these issues on appeal.

In sum, Petitioner's objections are overruled and the Fifteenth Ground for Relief is denied.

## SIXTEENTH GROUND FOR RELIEF

**The admission of gruesome and shocking photographs violated Hawkins' rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments.**

Petitioner did not raise this claim on direct appeal. In the post-conviction proceedings, the trial court held that the claim was barred by *res judicata*. (Doc. #17 ex. OO p. 38-39.) The court of appeals affirmed. See Hawkins, 1996 WL 348024, at *5. Petitioner attempted to cure the procedural default by raising the issue of the admission of autopsy photos as one underlying his ineffective assistance of appellate counsel claim in his Motion for Reconsideration to the Ohio Supreme Court and in his Ohio R. App. P. 26(B) Application to Reopen to the Ohio court of appeals. (Doc. #17 ex. WW p. 12; id. ex. CCC p. 9.) The Ohio Supreme Court denied the Motion for Reconsideration without stating its reasons and the Ohio First District Court of Appeals later denied Hawkins' Application as untimely. (Id. ex. YY & GGG.) However, as discussed above, the

"good cause" standard of Ohio R. App. P. 26 has not been applied with the regularity or

consistency needed to provide an adequate state law basis to preclude federal habeas relief.

See Richey, 395 F.3d at 680.  Petitioner's challenge to the effectiveness of his appellate counsel is

preserved.  See id.  Thus, the Court must determine if the ineffective assistance of Petitioner's

appellate counsel meets the cause and prejudice test to excuse the procedural default.

　　　　Petitioner alleges in his Amended Petition that the admission of certain photographs and

slides (collectively "the photographs") as exhibits at trial constituted prosecutorial misconduct and

that his trial counsel were ineffective for not objecting to the photographs' admission.  Petitioner

contends that the photographs of the victims and the car which were shown to the jury at trial were

gruesome and shocking, and that the prejudicial effect of the photographs outweighed their

probative value.  Petitioner does not dispute that defense counsel did not object to the photographs

during the guilt phase of trial, (T.p. 1767-69, 1805-06, 1808, 1819), but he argues in the pending

objections that defense counsel did object to the photographs during the sentencing phase, (T.p.

2567-68, 2656-57).

　　　　Defense counsel's failure to object to the photographs during the guilt portion of the trial

waived the issue of prosecutorial misconduct as to the guilt portion on direct appeal.  See Ohio v.

Myers, 97 Ohio St. 3d 335, 780 N.E.2d 186, at ¶ 126 (2002).  As for the use of the photographs at

the sentencing phase of the trial, Petitioner has misstated the facts in the trial proceedings transcript.

Defense counsel at the sentencing phase objected to only those exhibits that had been made a part

of the trial record over its objection in the guilt phase of trial.  (T.p. 2567-68, 2656-57.)[20]

---

　　　　[20] Additionally, in the ineffective assistance of appellate counsel claim presented to the
state courts, Petitioner objected only to the admission of autopsy photographs.  Petitioner did not
attempt to preserve any claim related to other photographs of the victims or of Richard's car.

Magistrate Judge Merz denied this Ground for Relief on the merits. He correctly pointed

out that the Court cannot determine why the photographs are alleged to be gruesome and shocking

because the photographs were not preserved as part of the record in this habeas appeal. Petitioner

simply has failed to establish that the admission of the photographs and his trial counsel's lack of

objection to the admission of the photographs deprived him of a fundamentally fair trial. As such,

Petitioner's objections fail and the Sixteenth Ground for Relief is denied.

## E. INEFFECTIVE ASSISTANCE OF COUNSEL

**SEVENTEENTH GROUND FOR RELIEF**

**Hawkins was denied his rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth
Amendments because his attorneys failed to adequately investigate and prepare for the
culpability phase of his capital trial.**

The Court will address each subclaim in the Seventeenth Ground for Relief separately. In

the first subclaim, Hawkins alleges that his trial counsel were ineffective for failing to investigate

Ken Boehmler. Petitioner did not raise this subclaim on direct appeal. The trial court during the

post-conviction relief proceedings held that the evidence *de hors* presented did not meet a minimum

level of cogency to support the claim. (Ex. OO p. 26-27.) The Ohio First District Court of Appeals

affirmed. See Hawkins, 1996 WL 348024, at *5. Magistrate Judge Merz recommended denying

the subclaim on the merits because Petitioner could not prove that his counsel's performance in this

regard, even if it was deficient, caused him prejudice. See Strickland, 466 U.S. at 687 (stating that

counsel must be deficient and have caused prejudice to establish a claim).

a. **Boehmler's Testimony.** Petitioner reargues the merits of this subclaim in his

objections. He argues, in brief, that had defense counsel interviewed Boehmler they would have

learned that he could not pick Hawkins out of a photo array or identify the vehicle in which the

bodies were discovered in a photo array.  At trial, Boehmler testified that he heard three sharp

noises around 12:30 a.m. on the night of the murders.  (T.p. 1503.)  Shortly after he heard the

noises, he saw a man get out of a parked silverish-gray colored car, walk up the sidewalk, walk

back to the car, and then drive away.  (T.p. 1499-1505.)  He described the physical build and dress

of the man generally, but testified that he could not see the man's face and he could not identify

Hawkins as the man he saw that night.  (T.p. 1505-06, 1509.)  Similarly, Boehmler testified that he

did not pay that much attention to the car and he could not identify the car he saw as being the one

shown in the State's exhibit 4A.  (T.p. 1504, 1510-11.)  Given this trial testimony that Boehmler

could not positively identify either Hawkins or the car in which the victims were found, Petitioner

was not prejudiced by the fact that defense counsel was not aware that Boehmler could not have

identified them in a photo array.  This subclaim fails on the merits.

    **b. Keith Miree.**  In the second subclaim, Petitioner argues that his trial counsel were

deficient for failing to interview Keith Miree.  Petitioner also raised this claim for the first time in

the post-conviction relief proceedings.  The state court of appeals denied the subclaim on the

merits.  See Hawkins, 1996 WL 348024, at *4.  In the Report and Recommendations, Magistrate

Judge Merz referenced his discussion on the Miree issues in the Third Ground for Relief, *supra*.

Petitioner argues that defense counsel would have learned that the State used Miree as an agent

after Hawkins' right to counsel had attached, and that the State made a deal with Miree.  This Court

does not believe that defense counsel was required to interview Miree.  At trial, defense counsel

already had significant impeachment evidence concerning Miree because they believed they could

prove that Miree offered to Hawkins' stepfather to provide favorable testimony in exchange for a

bribe.  (T.p. 447-51, 477-84.)  This subclaim fails on the merits because counsel was not

constitutionally deficient, or alternatively, Hawkins suffered no prejudice therefrom.

       **c. Lack of Investigation.**  In the third subclaim, Petitioner argues that defense counsel failed to adequately investigate the facts of the killings.  Petitioner argues more specifically that defense counsel should have interviewed and presented as witnesses at the guilt phase of the trial the three people who contradicted Henry Brown's alibi: Tommicka Washington, Anthony Washington, and Rhonda Calhoun.  Magistrate Judge Merz analyzed the subclaim on the merits.

       For the reasons stated in the Seventh Ground for Relief, *supra*, discussing the State's failure to disclose the testimony of the Washingtons and Calhoun, the Court holds that defense counsel's conduct, even if deficient, caused no prejudice to Hawkins.  The testimony of the Washingtons and Calhoun impeached Brown's credibility by contradicting his testimony as to where he was before the murders.  They testified that Brown was not at the Washingtons' house from approximately 8:00 p.m. and thereafter on the night of the murders.  The testimony does not establish that Brown had not returned to the scene of the murders before they took place.  The impeachment evidence also does not explain or contradict the crucial evidence that Hawkins' bloody fingerprint was found on a notebook in the victims' car or that Hawkins' pager number was found on a napkin in one of the victim's pockets.  As such, defense counsel's failure to interview the Washingtons and Calhoun did not render the trial unfair or the result unreliable.

       **d. Expert Testimony.**  In the fourth subclaim, Petitioner contends his defense counsel was deficient for not offering expert testimony at trial regarding the fingerprint, forensic, or the ballistics evidence.  This issue was not raised on direct appeal.  During the post-conviction relief proceedings, the trial court held that whether the defense hired experts was reflected in the record, that documents offered to meet the claim did not meet a minimum level of cogency, and that the

claim was barred by *res judicata*. (Doc. #17 ex. OO at 40-41.) The court of appeals affirmed.

See Hawkins, 1996 WL 348024, at *5. Magistrate Judge Merz held that the claim was procedurally

barred, or alternatively, failed on the merits.

      This Court agrees with Magistrate Judge Merz that the subclaim fails on the merits, and thus

it need not discuss the procedural default. The record is clear that defense counsel did hire an

expert who examined the fingerprint evidence. (Cutcher depo. p. 39-41; West depo. p. 39; Evid.

Hearing p. 49-50.) Defense trial counsel testified in these proceedings that they did not use the

expert at trial because he agreed with the State's expert and they did not want to bolster the State's

testimony. (Cutcher depo. at 39-41.) As to the failure to retain a forensics or ballistics expert,

Petitioner has not proven prejudice. He has not explained to what specifically the experts would

have testified which could have changed the result of the trial. This subclaim fails on the merits.

      Lastly, Petitioner contends his counsel were ineffective because they failed to obtain signed

witness statements in the possession of the State. This subclaim is cross-referenced with the

Seventh Ground for Relief, *supra*. Again, Petitioner has not established that the witness statements

would have provided material exculpatory or impeaching evidence. The subclaim fails on the

merits.

      Petitioner's objections are overruled and Seventeenth Ground for Relief is denied.

**EIGHTEENTH GROUND FOR RELIEF**

**Hawkins was denied his rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments by the acts and omissions of his trial counsel at the culpability phase of his capital trial.**

Petitioner raised on direct appeal only one set of the many subclaims in this Ground for Relief, the set involving defense counsel's omissions during the sentencing phase of trial.  He asserted this set of subclaims for the first time to the Ohio Supreme Court.  The Ohio Supreme Court held that Hawkins had waived the issue by not raising it before the court of appeals, or alternatively, that Hawkins had not established ineffective assistance under Strickland.  See Hawkins, 66 Ohio St. 3d at 348-49.  None of the issues were raised in the post-conviction proceedings.  Magistrate Judge Merz found the Eighteenth Ground for Relief to be procedurally defaulted, or alternatively, without merit.

This Court will consider the set of subclaims dealing with defense counsel's omissions during the sentencing phase on the merits because the Ohio Supreme Court did the same.  The Court will consider the other subclaims on the merits as well because every subclaim is without merit.  See 28 U.S.C. § 2254(b)(2).

a.  **Sufficiency of the Evidence.**  First, Petitioner submits that his trial counsel were ineffective for not moving to dismiss the aggravated robbery charges on the merits.  This subclaim is cross-referenced with the Eighth Ground for Relief, *infra*, wherein Petitioner submits that the jury did not have sufficient evidence to support its verdicts as to the offenses charged.  If the jury had sufficient evidence to convict, then his claim that his trial counsel were ineffective for not moving to dismiss the charges fails.  A habeas petitioner is entitled to relief "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt

81

beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979). The issue is not whether this Court believes there was proof beyond a reasonable doubt, but rather whether "*any* rational trier of fact" viewing the evidence in the light most favorable to the prosecution could have so found. Id. at 319 (emphasis in the original).

Petitioner raised the issue of the sufficiency of the evidence on direct appeal. The Ohio Supreme Court applied the Jackson standard set forth immediately above. See Hawkins, 66 Ohio St. 3d at 344. The Ohio Supreme Court held that there was sufficient evidence to support the conviction. See id. at 344-45. This Court agrees with Magistrate Judge Merz that the state court decision was not an unreasonable application of the law to the facts. See 28 U.S.C. § 2254(d)(2). The State presented testimony that Hawkins was in possession of a gun around the time of the murders. (T.p. 1369, 1418, 1453.) It presented evidence that on the day the victims died they had been carrying approximately $1400 in cash and that Marteen had been wearing four or five rings. (T.p. 1313, 1317, 1327, 1347-49.) Police officers testified that the Marteen's pockets were partially turned out when they arrived at the crime scene. (T.p. 1530-31, 1570.) No money or jewelry was found on the body of the victims, except for one ring worn by Richard. (T.p. 1531, 1640.) Examining this evidence in the light most favorable to the prosecution, this Court agrees with the state court that a reasonable jury could have convicted Hawkins of aggravated robbery. See Jackson, 443 U.S. at 319, 324. Accordingly, Hawkins' trial counsel were not deficient under Strickland for not moving to dismiss the aggravated robbery charges.

**b. Errors in Testimony.** In the next subclaim, Petitioner submits his counsel were deficient for not objecting to (1) the trial court's denial of the jury's request to re-read certain testimony, (2) the mischaracterization of witness testimony by the prosecution; and (3) erroneous

jury instructions. As to the jury's request to re-read certain testimony, the Court addressed this issue in the Twenty-Third Ground for Relief, *supra*. The Court reiterates here that trial counsel were not constitutionally deficient in regard to this issue. Trial counsel made a reasonable strategic decision not to highlight damaging testimony by Shawn Brown and Henry Brown by allowing the jury to re-hear the testimony or portions thereof.

As to the alleged mischaracterization of witness testimony, Petitioner is again referring to the prosecution's characterization of Ken Boehmler's testimony in their closing argument. This issue was addressed in the Eleventh Ground for Relief, *supra*. The Court concluded that the State's comments taken in context did not inaccurately imply that Boehmler was a second eyewitness to the murders. The Court likewise concludes that Hawkins' trial counsel were not constitutionally deficient for not raising an objection.

In regards to "other acts" testimony, Petitioner asserts that his trial counsel should have objected to Henry Brown's testimony that he had previously seen Hawkins in possession of a .25 caliber gun when he had "robbed some guy named Andre." (T.p. 1418.) Neither the State nor defense counsel elicited further testimony or put on other evidence regarding this alleged prior robbery. Magistrate Judge Merz concluded, and this Court agrees, that Brown's statement should not have been admitted because there was not significant evidence that the prior bad act actually occurred. See United States v. Haywood, 280 F.3d 715, 719-20 (6th Cir. 2002). Assuming that defense counsel erred, therefore, by not making a contemporaneous objection to this testimony,[21]

---

[21] The import of Brown's testimony is that he had seen Hawkins with the gun before. Trial counsel may have determined that objecting to the circumstances under which Brown had seen Hawkins with the gun would have drawn more attention to the alleged prior act than otherwise was generated by an isolated comment.

the issue becomes whether Hawkins was prejudiced by the deficiency.  See Strickland, 466 U.S. at

687.  The Court finds that counsel's failure to object did not deprive Hawkins of a fair trial.  See id.

(setting forth the prejudice standard).  The Court's confidence in the outcome of the proceedings is

not undermined by the admission of the testimony.  See id. at 694.  The jury had substantial other

evidence upon which to convict Hawkins including Hawkins' bloody fingerprint, Brown's

eyewitness testimony concerning these crimes, the presence of Hawkins' pager number on a

napkin, and other circumstantial evidence.  Additionally, Shawn Brown also testified that she had

seen Hawkins with a gun several weeks before the murders.  (T.p. 1365-70.)

    **c.  Jury Instructions.**  Lastly, Petitioner contends that his trial counsel should have

objected to erroneous jury instructions on the duplication of aggravating circumstances and what

constitutes a handgun.  The jury instruction issue as to the duplication of aggravating circumstances

is cross-referenced with the Twelfth Ground for Relief and the Sixth Ground for Relief, *infra*.

Hawkins was indicted on four counts of aggravated murder, and each count contained two

specifications.  The second specification stated, in accordance with O.R.C. § 2929.04(A)(7), that

Hawkins "was the principal offender in the commission of the aggravated murder or[,] if not the

principal offender[,] committed the aggravated murder with prior calculation and design."  (T.p.

2324-27.)  Petitioner states that the instruction was duplicative in that it allowed the jury to find

Hawkins guilty of two separate and distinct offenses (i.e. principal offender murder or prior

calculation and design murder) without finding either offense unanimously.

    Petitioner contends that the jury instruction was erroneous under Schad v. Arizona, 501 U.S.

624 (1991), and Ohio v. Penix, 32 Ohio St. 3d 369, 513 N.E.2d 744 (1987).  In Schad, Justice

Souter held, with the Chief Justice and two justices concurring, and one justice concurring in the

84

result, that "the requisite specificity of the charge may not be compromised by the joining of separate offenses."  501 U.S. at 633.  The Supreme Court, per Justice Souter and the concurrences, also stated, however, that it may be alleged in a single count that a defendant committed a single offense by one or more specified means.  See id. at 631.  State law determines whether statutory alternatives like principal offender and prior calculation are mere means of committing a single offense, or rather, if they are independent elements of a crime.  See id. at 636.

Turning to state law, Petitioner contends that Penix stands for the proposition that prior calculation and design is a distinct conceptual grouping from principal offender, and that the "alternatives [ ] are not to be charged and proven in the same cause."  See 32 Ohio St. 3d at 371.  In Penix, the trial court had erred by instructing the jury before sentencing that it was to weigh both that the defendant was a principal offender and that he acted with prior calculation and design as aggravating circumstances against the mitigating factors.  See id. at 370.  In subsequent cases, the Ohio Supreme Court found no error where "the prior calculation and design and principal offender elements of R.C. 2929.04(A)(7) were charged disjunctively to the jury in a single specification; the jury could not have found both elements to have been proven, as it could have in Penix."  Ohio v. Cook, 65 Ohio St. 3d 516, 527, 605 N.E.2d 70 (1992); see also Ohio v. Nields, 93 Ohio St. 3d 6, 30, 752 N.E.2d 859 (2001) (no error if alternatives in the sentencing phase instruction were listed disjunctively).  Nonetheless, a court errs if it does not instruct the jury that they must be unanimous in agreeing on which of the alternatives the defendant is guilty.  See Ohio v. Burke, 73 Ohio St. 3d 399, 405, 653 N.E.2d 242 (1995).  That error is harmless if the jury elsewhere indicates its unanimous verdict on either the prior calculation and design aspect or on the principal offender aspect.  See id.; see also Ohio v. Moore, 81 Ohio St. 3d 22, 40, 689 N.E.2d 1 (1998).

In this case, in Counts 1 and 3, both of which the jury found Hawkins guilty of committing, the jury was instructed that they had to find Hawkins guilty of "purposely caus[ing] the death of another with prior calculation and design" before reaching the issue of whether the State proved either of the alternative specifications.  (T.p. 2327-28, 2332.)  As to the specifications, the trial court listed the alternatives in the disjunctive for each of the four murder counts consistent with Nields and Cook.  (T.p. 2333, 2337.)  The trial court erred to the extent that it did not require an unanimous finding as to which of the alternative specifications they found, as required by Burke. But that error was harmless per Burke and Moore because the jury unanimously concluded that Hawkins acted with prior calculation and design in killing Marteen and Richard in Counts 1 and 3, respectively.  Accordingly, Hawkins' trial counsel either were not ineffective for failing to object to the instruction, or alternatively, Hawkins suffered no prejudice thereby.

As to the latter jury instruction issue, Petitioner states the lack of an instruction as to what constitutes a handgun caused a verdict based on incomplete elements of a crime.  At the trial, the written instructions given to the jury included an instruction as to what constitutes a handgun, but the judge failed to read that particular instruction to the jury in his charge.  (T.p. 2355.)  When the State pointed out the judge's omission outside the presence of the jury, the judge offered to read the definition of handgun to the jury, but defense counsel refused the offer stating that he thought reading it separately from the other instructions "would highlight it."  (Id.)  Trial counsel's decision clearly was tactical.  In light of the fact that the handgun definition was in the written instructions, the Court finds that Hawkins' trial counsel were not deficient for failing to object, or alternatively, that Hawkins suffered no prejudice thereby.

The Court overrules the objections and denies the Eighteenth Ground for Relief.

**FIRST AND SECOND GROUNDS FOR RELIEF**

**Hawkins was denied his rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments when his trial counsel insulted and threatened the jury regarding its guilt finding, during the mitigation closing argument at his capital trial.**

**Hawkins was denied his rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments by his trial counsel's utter lack of investigation and preparation for the mitigation phase of his capital trial.**

In the Report and Recommendations, Magistrate Judge Merz recommended denying the First Ground for Relief, but granting the Second Ground for Relief. Petitioner raises objections in regards to the First Ground for Relief, and Respondent raises objections in regards to the Second Ground for Relief. The factual background of the two Grounds for Relief overlaps and thus the Court addresses both Grounds together here.

a. **Procedural History of the First Ground for Relief.** Petitioner asserted this Ground for Relief for the first time to the Ohio Supreme Court on direct appeal. The Ohio Supreme Court held that the claim should have been raised in the court of appeals and thus was waived. See Hawkins, 66 Ohio St. 3d at 348. Alternatively, the Ohio Supreme Court held that the claim failed on the merits. See id. at 348-49. The issue also was raised in the state post-conviction relief proceedings. The trial court stated that the claim was barred by *res judicata* that the evidence *de hors* the record submitted by Hawkins did not support the claim for relief. (Doc. #17 ex. OO at 23.) The state court of appeals agreed that the claim was barred by *res judicata*. See Hawkins, 1996 WL 348024, at *5. Petitioner also presented this issue as one underlying his ineffective assistance of appellate counsel claim in his Motion for Reconsideration to the Ohio Supreme Court and in his Rule 26(A) Application to Reopen. (Doc. #17 ex. WW at 9; id. ex. CCC at 7.)

In a previous Decision and Order (doc. #124) and in the Supplemental Memorandum to the

87

Decision and Order (doc. #130), Magistrate Judge Merz likewise held that the first claim was procedurally defaulted.[22]  In the Supplemental Memorandum, Magistrate Judge Merz found that the ineffective assistance of appellate counsel did not excuse the procedural default because the Ohio R. App. P. 26(B) Application to Reopen was untimely filed.  (Doc. #130 p. 5.)  This Court upheld the Decision and Order, making the procedural default finding the law of this case.  (Doc. #134.)  Magistrate Judge Merz, therefore, again held this claim to be procedurally defaulted in his Report and Recommendations.

In this Order, the Court has held that the ineffectiveness of appellate counsel can constitute the cause that, together with the prejudice created thereby, will excuse a procedural default.  See Richey, 395 F.3d at 679; McFarland, 356 F.3d at 699.  The Court also has recognized that where a Rule 26(B) motion is denied as untimely, the "good cause" standard of Rule 26(B) has not been applied with the consistency needed to provide an adequate state law procedural basis to preclude federal habeas relief.  See Richey, 395 F.3d at 680.  Accordingly, the Court erred in its previous Order to the extent it did not consider to have been preserved the challenge to the effectiveness of Hawkins' appellate counsel for failing to raise this First Ground for Relief on direct appeal.  Thus, the Court will consider on the merits below whether the ineffectiveness of Hawkins' appellate counsel provides the "cause and prejudice" to excuse the procedural default of this claim.

**b. Procedural History of the Second Ground for Relief.**  This claim was raised initially before the Ohio Supreme Court on direct appeal.  The Ohio Supreme Court held that the claim was waived because it was not first raised in the court of appeals.  See Hawkins, 66 Ohio St. 3d at 348.

___

[22] Magistrate Judge Merz also held that Petitioner was not entitled to an evidentiary hearing on the First Ground for Relief even if the claim was not procedurally defaulted.  (Doc. #124.)

88

Alternatively, the Ohio Supreme Court held that the claim failed on the merits. See id. at 348-49.
The issue also was raised in the state post-conviction relief proceedings. The trial court stated that
this claim, the twenty-ninth claim for relief, was based on the record and was barred by *res
judicata*. (Doc. #17 ex. OO at 23-25.) The trial court also noted that Hawkins' defense trial
counsel presented a theory of residual doubt at the sentencing phase and that "[p]roof of the fact
that an alternate theory of mitigation existed does not demonstrate ineffective assistance of
counsel." (Id.) The state court of appeals agreed that the claim was barred by *res judicata*. See
Hawkins, 1996 WL 348024, at *5.

Despite the *res judicata* holdings by the state courts, Magistrate Judge Merz concluded that
the claim was not procedurally barred. He cited the Ohio procedural rule that an ineffective
assistance of trial counsel claim need not be raised on direct appeal if the claim needs support from
evidence *de hors* the record. In such cases, the claim may be raised for the first time in post-
conviction relief proceedings. See Ohio v. Lentz, 70 Ohio St. 3d 527, 639 N.E.2d 784, at syllabus
(1994); State v. Cooperrider, 4 Ohio St. 3d 226, 228, 448 N.E.2d 452 (1983). Here, Petitioner's
claim relies on affidavits outside the trial record, the substance of which are discussed in the factual
background subsection immediately below. Hawkins' appellate counsel could not have raised on
direct appeal the claim that trial counsel were ineffective based on this *de hors* evidence. Thus,
while *res judicata* is an adequate state procedural ground to bar federal habeas relief, Petitioner did
not violate the procedural rule here. See Reynolds, 146 F.3d at 347-48 (stating that to find a claim
has been procedurally defaulted, "the court must find there is a state procedural rule that applies to
the petitioner's claim, and the petitioner failed to comply with the rule. . . ."). The Court holds that
the Second Ground for Relief was not procedurally defaulted and will consider the claim on the

merits below.

  **c. Factual Background of First and Second Grounds**.  At the sentencing phase of the trial, defense counsel waived opening statement stating that "we'll speak to the jury through our presentation of the evidence."  (T.p. 2567.)  Defense counsel pursued a strategy of residual doubt by re-calling Henry Brown to refresh the jury's recollection regarding his version of the events on the night of the murders and then called three witnesses to attack Brown's alibi.  Those three witnesses were Tommicka Washington, Anthony Washington, and Rhonda Calhoun.  The Court in regards to the Eleventh Ground for Relief, *supra*, discussed the testimony that the Washingtons and Calhoun gave which contradicted Brown's testimony at the guilt and sentencing phases about his whereabouts on the night of the murder.

  The theme of defense counsel's closing argument at the sentencing phase of Hawkins' trial was that the jury should not have convicted Hawkins on the strength of the testimony of Henry Brown, whom defense counsel characterized as a proven liar, and that the jury should not compound its mistake by sentencing Hawkins to death.  Defense counsel spoke harshly to the jury on multiple occasions in the closing argument:

-  "I'm very disappointed in your verdicts.  Because in our opinion the state has not proven guilt beyond a reasonable doubt."  (T.p. 2687.)

-  Speaking on the jury's assumed inference from the partial fingerprint in blood found on the notebook that Hawkins committed the murders:  "I don't understand how you could have followed the law and arrived at that verdict.  When you look at the instructions the judge gave you, instructions were very clear.  He talked about inferences.  From any set of facts or any one fact you can draw any number of inferences.  But you can't stack inference upon inference. . . .  That's what you did if you took the fingerprints and convicted him on that."  (T.p. 2689-90.)

-  "Now, the state is saying to you accept again what [Henry Brown] said and

put this young man [Shawn Hawkins] in the electric chair.  You may have made one mistake, don't compound it.  Don't make two mistakes."  (T.p. 2692-93.)

- "Now you've made a mistake, but don't compound it.  And I'm not just standing up here calling [Henry Brown] a liar just because I represent Shawn Hawkins.  We've proven he is a liar."  (T.p. 2694.)

- "[E]veryone in this courtroom knew that [Henry Brown] was lying but you folks."  (T.p. 2697.)

- "And I also feel badly that you folks didn't do your job. . . . You built inference on inference to get conviction. And those of you who did not agree gave in.  Somebody on this jury was not convinced beyond a reasonable doubt as to guilt.  I know that because you were out so long.  And I know that from the nature of your questions.  But you sold out.  You gave in."  (T.p. 2698.)

- "I will tell you this: what goes around comes around.  This is as much your trial as it is his trial.  These are your rights as well as his rights.  What you did to him will come back to you.  If you let this system convict a young man and put him to death on the evidence in this courtroom, on the lies of Henry Brown, be prepared to accept the consequences."  (T.p. 2699.)

John West, Petitioner's defense counsel during this trial and now a Hamilton County, Ohio Common Pleas judge, testified in these habeas proceedings that "I concluded early on that this was not a mitigation case.  It wasn't a case that we would try to win after there had been a finding of guilty."  (West depo. p. 26; see also Evid. Hearing p. 324.)  West suggested that he strongly believed after Hawkins had testified at the trial that the verdict would go against Hawkins because of the evidence the State had and the fact that Hawkins presented as a poor witness.  (West depo. p. 31-32, 74.)  West admitted that he did not like the jury after the verdict, and that he also may not have liked them before the verdict.  (Id. p. 33.)  He admitted that he felt angry towards the jury and he believed they had their minds made up about the sentence to impose when he argued before them at the sentencing phase.  (Id. p 34, 37.)  He felt like he was "talking to that wall."  (Id. p. 34.)

He agreed that he might have chastised the jury during his sentencing phase closing, but stated that it was part of his strategy to "[c]hallenge that jury to save [Hawkins'] life." (West depo. p. 77.) West described his strategy as being based on a theory of residual doubt. (Evid. Hearing p. 349.) Because the jury convicted Hawkins of two execution-style homicides and Hawkins had a prior record, West did not believe he could argue that the killings were an accident or that Hawkins was a good guy. (West depo. p. 77-78.) West testified that he did not think that presenting affidavits from Hawkins' family members would have had an effect on the jury. (Evid. Hearing p. 327.) "If the jury comes back and finds him guilty of two executions, there's not much we can tell them that's going to change their mind with regard to the ultimate verdict." (Evid. Hearing p. 347.) When he was asked if he talked to Hawkins, his mother, or his stepfather before the sentencing phase regarding the witnesses they could call, West stated that he made clear to them that they were going to have to try aggressively to win the case at trial. (Evid. Hearing p. 347.) "[T]his is not a case we thought about mitigation." (Id.) He stated that he would evaluate the case the same way today and follow the same strategy. (West depo. p. 78.)

During the post-conviction relief proceedings, Hawkins' new attorneys obtained affidavits from nine of Hawkins' immediate and extended family members each of whom stated that they would have been willing to testify at the sentencing phase but were not asked to do so. (Evid. Hearing PX 23 ex. 35-43.) Six of the family members stated that they were never contacted by an attorney or investigator concerning Hawkins' trial. (Id.) The affiants could have testified about the following items which would have been relevant mitigation evidence:

- Hawkins' biological father had a history of alcohol use. (Belle Green aff; Renee Rodgers aff.; Doris Hull aff; Kevin Hawkins aff.; Stephanie Hawkins Harris aff.; Judy Hogan aff. )

92

- There was discord in Hawkins' parents' marriage, his father engaged in extramarital affairs, and his parents eventually divorced.  (Belle Greene aff.; Renee Rodgers aff.; Kevin Hawkins aff.; Stephanie Hawkins Harris aff.; Judy Hogan aff.; James Hawkins aff.)

- Hawkins' father physically assaulted his mother on one occasion breaking her nose.  (Kevin Hawkins aff.; James Hawkins aff.)

- Hawkins was impacted by favoritism shown to his brother at school and at home.  (Charles Hogan aff.)

- Hawkins' sister died at the age of three and Hawkins appeared depressed afterwards.  (Merinda Mae Walker aff.; Doris Hull aff.; Kevin Hawkins aff.; Stephanie Hawkins Harris aff.; Judy Hogan aff.; James Hawkins' aff.)

- Hawkins appeared to be depressed and tried at least twice to commit suicide at a young age.  (Belle Green aff.; Kevin Hawkins aff.; James Hawkins aff.)

- Hawkins refused to take a plea bargain in this case stating that he would not plead to a crime he did not commit.  (Charles Hogan aff.)

**d.  Analysis.**  The issue in the First Ground for Relief is whether appellate counsel was constitutionally ineffective for not raising on appeal that trial counsel rendered ineffective assistance at the sentencing phase by insulting and berating the jury.  The issue in the Second Ground for Relief is whether trial counsel rendered ineffective assistance at the sentencing phase by their lack of investigation and preparation.  The Court is mindful in its analysis to examine the adequacy of counsel's representation in light of "counsel's perspective at the time" and to give a "heavy measure of deference to counsel's judgments."  Rompilla, slip op. at 5 (quoting Strickland, 466 U.S. at 689, 691).

Hawkins was convicted of murdering two men, each crime with two separate aggravating circumstances.  See O.R.C. § 2929.04(A)(5) (offense at bar included the purposeful killing of or attempt to kill two or more persons); O.R.C. § 2929.04(A)(7) (offense was committed in the course

of an aggravated robbery, and, the offender either was the principal offender in the aggravated murder or committed the murder with prior calculation and design). Pursuant to Ohio law, the jury was to recommend a death sentence if they found by proof beyond a reasonable doubt that the aggravating circumstances outweighted the mitigating factors. See O.R.C. § 2929.03. The statutory mitigating factors the jury was instructed to consider included, among other statutory factors, (1) the nature and circumstances of the offense, (2) the history, character, and background of the offender, (3) the youth of the offender, and (4) any other factor that is relevant to the issue of whether the offender should be sentenced to death. (T.p. 2708-09 (identifying the statutory factors found at O.R.C. § 2929.04).) As the prosecution pointed out in its closing argument at the sentencing phase, defense counsel did not identify a single mitigating factor which the jury could find in Hawkins' favor. (T.p. 2703.)

The First Ground for Relief is concerned not with whether trial counsel investigated and presented mitigating evidence, but rather whether trial counsel were deficient for insulting the jury and appellate counsel deficient for not raising trial counsel's deficiency on appeal. The Court holds that this claim fails because Petitioner cannot establish prejudice resulting from the performance of either trial counsel or appellate counsel on this issue. Trial counsel's primary deficiency at the sentencing phase, as discussed in detail below, was the failure to investigate and present mitigating evidence. Even had trial counsel adopted a more conciliatory approach in his sentencing phase closing argument, there is no reasonable probability, as the standard is set forth in Strickland, that the jury would have concluded that the balance of the aggravating and mitigating circumstances did not warrant death. See Strickland, 466 U.S. at 695. The only possible way that the outcome of the sentencing might have been different would have been for defense counsel to have presented

mitigating evidence.  Accordingly, the Court holds that the alleged ineffectiveness of appellate

counsel does not provide sufficient "cause and prejudice" to excuse Petitioner's procedural default

of the First Ground for Relief.

　　　　Turning to the Second Ground for Relief, "when a client faces the prospect of being put to

death unless defense counsel obtains and presents *something* in mitigation, minimal standards

require some investigation." Mapes, 171 F.3d at 426 (emphasis in the original).  The Sixth Circuit

strongly has suggested that to render effective assistance in a capital case, trial counsel is required

to begin preparations for mitigation before the conclusion of the guilty phase of the trial.  See e.g.

Johnson v. Bell, 344 F.3d 567, 573 (6th Cir. 2003) (collecting cases); Glenn v. Tate, 71 F.3d 1204,

1207 (6th Cir. 1995).  Of course, this Court must indulge a "strong presumption" that trial counsel's

conduct fell within a wide range of professional competency.  See Johnson, 344 F.3d at 573.  Trial

counsel should not ignore known leads that might lead to mitigation evidence, but they are not

required pursue every conceivable line of mitigation.  Id. at 573-74.  The Supreme Court has

recognized that "[r]easonably diligent counsel may draw a line when they have good reason to think

further investigation would be a waste." Rompilla, slip. op. at 7.  The complete failure to make an

independent investigation, apart from the representations of the client, of any mitigating evidence

usually falls below minimum standards of competence.  See Carter v. Bell, 218 F.3d 581, 595-96

(6th Cir. 2000); cf. Coleman v. Bell, 244 F.3d 533, 544-45 (6th Cir. 2001) (failure to do

investigation not deficient when client would not cooperate in investigation and client directed

counsel to pursue residual doubt theory).  This Court remains cognizant always that "[i]f a jury has

nothing to weigh against the aggravating circumstance, it almost certainly must find that the

aggravating circumstance outweighs the (nonexistent) mitigating circumstances, and recommend

death."  Mapes 171 F.3d at 426.

This Court agrees with Magistrate Judge Merz that trial counsel's strategy of arguing only residual doubt amounted to constitutionally ineffective counsel under the circumstances.[23]  Trial counsel testified that he did not think that presenting testimony from Hawkins' family members would be successful.  (Evid. Hearing p. 327.)  When asked if he discussed mitigation strategy with Hawkins, or with his mother and stepfather, with whom he did consult throughout trial, and from whom he presumably could have discovered relevant information about Hawkins' childhood suicide attempts, West stated only that he told them they would have to try to win the case at trial. (Id. p. 347.)  His answer implies that he did not inquire about potential mitigating evidence from them.  Also importantly, the evidence is clear that defense counsel did not affirmatively argue even one mitigating factor to the jury.[24]  The failure to do so requires a finding of deficient performance under Strickland.

The Court must also consider whether trial counsel's deficiency prejudiced Hawkins.  The Supreme Court in Strickland defined the issues as follows: "When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer–including an appellate court, to the extent it independently reweighs the evidence–would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."  466 U.S. at 695.  Thus, under Ohio law, the issue

---

[23] The Court notes that the Ohio Supreme Court decided several years after Hawkins was convicted and sentenced that residual doubt is not an acceptable mitigating factor under O.R.C. § 2929.04(B).  See Ohio v. McGuire, 80 Ohio St. 3d 390, 686 N.E.2d 1112, at syllabus (1997).

[24] The Ohio Supreme Court noted that Hawkins was no older than twenty-one years old at the time of the murders, but found the factor to be entitled to little weight.  See Hawkins, 66 Ohio St. 3d at 351.

is whether there is a reasonable probability that at least one juror would have concluded that the aggravating circumstances did not outweigh the mitigating factors beyond a reasonable doubt if the juror had know about Hawkins' childhood background.  See Frazier, 343 F.3d at 798.

The Court holds that there is a reasonable probability that at least one juror would have concluded that the aggravating circumstances did not outweigh the mitigating factors beyond a reasonable doubt.  There is a reasonable probability that at least one juror would have found Hawkins to be less morally culpable in some way based on the fact that he had a troubled upbringing marked by depression and two attempts at suicide.  As such, this Court's confidence in the jury's recommendation for the death sentence has been undermined.  See Strickland, 466 U.S. at 694.  To the extent that the Ohio Supreme Court reached the prejudice prong under Strickland, which is unclear from its one-sentence analysis, the Court holds that its application of Strickland was objectively unreasonable.  See 28 U.S.C. § 2254(d)(1).

Accordingly, the Court overrules Petitioner's objections as to the First Ground for Relief and denies the First Ground for Relief on the merits, and the Court denies the Respondent's objections as to the Second Ground for Relief and grants the writ as to the Second Ground for Relief.

**F.  JURY**

**EIGHTH GROUND FOR RELIEF**

**The trier of fact's verdicts as to the offenses contained in the indictment were based upon insufficient evidence and violated Hawkins' rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.**

Petitioner asserts three subclaims here.  He alleges that the jury's verdict was based on insufficient evidence identifying Hawkins as the perpetrator, insufficient evidence to convict Hawkins of aggravated robbery, and insufficient evidence that the aggravating circumstances outweighed the mitigating factors.  Petitioner stated these subclaims on direct appeal.  The Ohio Supreme Court held that there was sufficient evidence to identify Hawkins as the killer, that there was sufficient evidence to convict Hawkins of aggravated robbery, and that the aggravating circumstances for each killing outweighed the mitigating factors.  See Hawkins, 66 Ohio St. 3d at 344-45, 351.  On the last issue, the Ohio Supreme Court noted that the only potential mitigating factor, which was entitled to very little weight, was Hawkins' age of no more than twenty-one at the time of the murders.  See id. at 351.

a.  **Evidence Concerning Hawkins as the Murderer.**  As to the first subclaim, Petitioner is entitled to relief "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  Jackson, 443 U.S. at 324.  The issue is not whether this Court believes there was proof beyond a reasonable doubt, but rather whether "*any* rational trier of fact" viewing the evidence in the light most favorable to the prosecution could have so found.  Id. at 319 (emphasis in the original).  Because the state courts ruled on the merits, this Court must determine if the state courts unreasonably applied the controlling federal law.  The Court first notes that the Ohio Supreme Court analyzed this subclaim

under the appropriate standard from Jackson.  See Hawkins, 366 U.S. at 344-45.

       In his objections, Petitioner points to the testimony of defense-proffered witnesses as follows: two witnesses who had been with Hawkins in the early and late evening hours on the night of the murders and testified they saw Hawkins sit in the rear of a Hyundai with Terrance Richard shortly after 7:30 p.m., (T.p. 1825-35, 1859-1864), a witness who contradicted Henry Brown's testimony that he (the witness) had been at the scene of the crime and who stated that the police offered to end his probation if he testified against Hawkins, (T.p. 1884, 1888), a witness who testified that she drove Hawkins home around midnight on the night of the murders, (T.p. 1933-35), a witness who testified she was with Hawkins from approximately 12:45 a.m. until approximately 3:00 a.m. on the night of the murders, (T.p. 1960), and a witness who claimed to be with Henry Brown on the night of the murders contradicting Brown's version of events and who stated that Brown told him after the murders that he did not know who did it, (T.p. 1990-99).  Hawkins also points to his mother's testimony that Hawkins talked with the victim Richard at 9:00 p.m. the night of the murders, that Hawkins then left the house for a few hours and returned home around 12:00 a.m., and that Hawkins' friend came to visit him at 12:45 a.m.  (T.p. 2030-38.)  Petitioner also again attacks the credibility and veracity of Henry Brown in his objections and argues that the State's case was predicated on this unreliable testimony.

       In sum, Petitioner in his objections requests that this Court conclude that Brown was not a credible witness, but that the defense witnesses who provided Hawkins with an alibi on the night of the murders were credible.  The role of this Court, however, is to examine the sufficiency of the evidence, not the quality of the evidence or the credibility of witnesses.  See Martin v. Mitchell, 280 F.3d 594, 618 (6th Cir. 2002).  "[A]ttacks on witness credibility are simply challenges to the

quality of the government's evidence and not to the sufficiency of the evidence." Id. (quoting

United States v. Adamo, 742 F.2d 927, 935 (6th Cir. 1984)). Also, the Ohio Supreme Court set

forth in detail the trial evidence upon which it concluded that the jury had sufficient evidence to

conclude Hawkins killed the victims. This evidence includes, in brief, Brown's testimony that he

saw Hawkins shoot Richard and that Marteen already was dead, Boehmler's testimony that he

heard loud noises that could have been gunshots at the same time Brown stated that the murders

occurred and that he saw someone fitting Hawkins' description driving a silver-gray sedan,

Hawkins' admission to negotiating a drug deal with the victims earlier in the day, and Hawkins'

fingerprints in the vehicle, including one print set in blood. See Hawkins, 66 Ohio St. 3d at 344-45.

The Ohio Supreme Court's analysis is not an unreasonable application of the Jackson standard. See

28 U.S.C. § 2254(d)(1).

      **b. Evidence Regarding the Aggravated Robbery Conviction.** As to the second

subclaim, the Court determined in regards to the Eighteenth Ground for Relief, *supra*, that

examining this evidence in the light most favorable to the prosecution, a reasonable jury could have

convicted Hawkins of aggravated robbery. See Jackson, 443 U.S. at 319, 324. Accordingly, this

subclaim fails on the merits.

      **c. Evidence Supporting the Death Verdict.** As to the third subclaim, Hawkins alleges

that there was insufficient evidence to support a death verdict. The jury found two separate

aggravating circumstances at the guilt phase of trial beyond a reasonable doubt: O.R.C.

§ 292.04(A)(5) (offense at bar included the purposeful killing of or attempt to kill two or more

persons) and O.R.C. § 2929.04(A)(7) (offense was committed in the course of an aggravated

robbery, and, the offender either was the principal offender in the aggravated murder or committed

100

the murder with prior calculation and design). Defense counsel did not explicitly put forth any

mitigating factors to weigh against the aggravating circumstances. <u>See</u> Second Ground for Relief,

*supra*. The jury could have gleamed from the earlier trial testimony that Hawkins was no older

than the age of twenty-one at the time of the murders and considered that as a mitigating factor.

(T.p. 2102.) Based on this evidence, the Court concludes a rational trier of fact could have

determined that the aggravating circumstances outweighed the mitigating factors. <u>See</u> <u>Jackson</u>, 433

U.S. at 324. Petitioner's rights were not violated, his objections are overruled, and the Eighth

Ground for Relief is denied.

**SIXTH GROUND FOR RELIEF**

**The jury's failure to unanimously find an element of an aggravated murder specification violated Hawkins' rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments.**

Petitioner argues in this Ground for Relief that the jury did not reach a unanimous verdict in

regards to the second specification on each count of aggravated murder. The trial court instructed

the jury as to the second specification, in accordance with O.R.C. § 2929.04(A)(7), that Hawkins

"was the principal offender in the commission of the aggravated murder or, if not the principal

offender, committed the aggravated murder with prior calculation and design." (T.p. 2324-27.)

Petitioner states that the instruction was duplicative in that it allowed the jury to find Hawkins

guilty of two separate and distinct offenses (i.e. principal offender murder <u>or</u> prior calculation and

design murder) without finding either offense unanimously.

This Ground for Relief overlaps on the merits with the Eighteenth Ground for Relief, *supra*.

Petitioner argued in the Eighteenth Ground for Relief that his trial counsel were ineffective for not

objecting to the jury instructions on this point. The Court has concluded that the Court may have

101

erred in not requiring the jury to separately and unanimously find Hawkins guilty of either principal

offender murder or prior calculation and design murder. See Burke, 73 Ohio St. 3d at 405.

However, that error was harmless because the jury must have unanimously concluded that Hawkins

acted with prior calculation and design on Counts 1 and 3 in order to have reached the specification

issue. See Moore, 81 Ohio St. 3d at 40; Burke, 73 Ohio St. 3d at 405.

Petitioner's objections are overruled and the Sixth Ground for Relief is denied on the merits.

**TWELFTH GROUND FOR RELIEF**

**The death sentence in Hawkins' case violated the Fifth, Sixth, Eighth and Fourteenth Amendments. The jury's sentencing verdict was made by jurors who were provided with instructions that were *in toto* misleading, confusing, and tilted the sentencing process in favor of a sentence of death.**

Petitioner did not raise this issue on direct appeal. The issue was raised in the post-

conviction relief proceedings. The trial court held that the claims were based solely on the wording

of the instructions contained in the trial transcript and thus were barred by the doctrine of *res*

*judicata*. (Doc. #17, ex. OO p. 20-22.) The trial court also held that the affidavit of a linguist

offered as evidence *de hors* the record was not sufficient to save the claims from the *res judicata*

bar. (Id.) The court of appeals affirmed the *res judicata* finding. See Hawkins, 1996 WL 348024

at *5. Magistrate Judge Merz held the claim to be procedurally barred because *res judicata* is an

adequate and independent state law ground for upholding a conviction. See e.g., Frazier, 343 F.3d

at 805; Buell, 274 F.3d at 349.

However, Petitioner asserts that the ineffectiveness of his appellate counsel for failing to

raise this issue on direct appeal is cause to excuse the state-law procedural bar. Petitioner

attempted to cure the procedural default by raising the issue as one underlying his ineffective

102

assistance of appellate counsel claim in his Motion for Reconsideration to the Ohio Supreme Court and in his Ohio R. App. P. 26(B) Application to Reopen.  (Doc. #17 ex. WW p. 8; id. ex. CCC p. 7, 10.)  The Ohio Supreme Court denied the Motion for Reconsideration without stating reasons therefore and the Ohio court of appeals later denied Hawkins' Application as untimely.  (Id. ex. YY & GGG.)  However, the "good cause" standard of Ohio R. App. P. 26 has not been applied with the regularity or consistency needed to provide an adequate state law basis to preclude federal habeas relief.  See Richey, 395 F.3d at 680.  Petitioner's challenge to the effectiveness of his appellate counsel is preserved.  See id.  Thus, the Court must determine if the ineffective assistance of Petitioner's appellate counsel meets the cause and prejudice test to excuse the procedural default.

During the trial proceedings, defense trial counsel made two minor objections to the jury instructions for the sentencing phase of the trial, but neither objection involved the issues raised herein.  (T.p. 2662-67.)  The failure of trial counsel to object to the sentencing instructions given to the jury waived all but plain error on appeal.  See Ohio v. Hartman, 93 Ohio St. 3d 274, 289, 292, 754 N.E.2d 1150 (2001).  Appellate counsel generally is not ineffective for failing to raise issues on appeal that were not properly preserved at trial.  See Hutton, 100 Ohio St. 3d 176 at ¶ 54.

Petitioner first argues in his objections that the trial court erred, and counsel should have objected at trial and raised the issue on appeal, when the trial court instructed the jury that they had to reach a unanimous verdict on death or on either of the two alternative life verdicts.  The trial court did instruct the jury that their sentencing verdict had to be unanimous.  (T.p. 2709-16.)  However, the instruction did not constitute error, much less plain error.  The relevant Ohio statute states as follows:

If the trial jury unanimously finds, by proof beyond a reasonable doubt, that the

103

> aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, the trial jury shall recommend to the court that the sentence of death be imposed on the offender. Absent such a finding, the jury shall recommend that the offender be sentenced to life imprisonment with parole eligibility after serving twenty full years of imprisonment or to life imprisonment with parole eligibility after serving thirty full years of imprisonment.

O.R.C. 2929.03(D)(2). Ohio and federal courts have interpreted this statute to require a unanimous verdict as to either a death sentence or a life sentence. See e.g. Henderson v. Collins, 262 F.3d 615, 620 (6th Cir. 2001); Ohio v. Smith, 87 Ohio St. 3d 424, 437-38, 721 N.E.2d 93 (2000); Ohio v. Jenkins, 15 Ohio St. 3d 164, 473 N.E.2d 264, at syllabus ¶ 10 (1984).

Petitioner misapplies the primary precedents he cites. For example, the erroneous jury instruction in Ohio v. Brooks, 75 Ohio St. 3d 148, 661 N.E.2d 1030 (1996), stated that the jury "was required to determine unanimously that the death penalty is inappropriate before [the jury could] consider a life sentence." 75 Ohio St. 3d at 159-60. Likewise, in the Mapes case, the jury was instructed that they could proceed to determine which life imprisonment sentence to apply only after unanimously finding that the aggravating circumstances did not outweigh the mitigating factors. See 171 F.3d at 416. The courts in each case erred by instructing the jury that they had to unanimously reject death before determining which life sentence to impose. See Mapes, 171 F.3d at 416; Brooks, 75 Ohio St. 3d at 160. However, even the Brooks court agreed that a life sentence verdict had to be unanimous. See 75 Ohio St. 3d at 162. Although the trial court here could have more clearly explained that the jury did not have to be unanimous either way on death before considering a life sentence, the trial court did not erroneously instruct the jury in Hawkins' trial that it had to unanimously reject the death sentence. This subclaim fails on the merits, appellate counsel was not deficient for not raising it on appeal, and Petitioner has not established cause for the

104

procedural default of this subclaim.

In several related subclaims, Petitioner argues that the trial court erred, and counsel should have objected at trial and raised the issue on appeal, by instructing the jury to consider non-statutory aggravating factors. To the extent one of these subclaims is based on the trial court's instruction quoting O.R.C. § 2929.04(B)(7), the Court rejects the subclaim on the merits in regards to the Twenty-Second Ground for Relief, *infra*.

In another subclaim, Petitioner asserts that the prosecutor and trial court erred by informing the jury that they could consider "the nature and circumstances" of the offense or of the aggravating factors themselves as non-statutory aggravating factors. The Court agrees that the prosecutor acted improperly when it implied that the jury should consider the "execution style" of the murders as an aggravating circumstance. (T.p. 2701.) That is not a proper statutory aggravating factor. See O.R..C. §§ 2929.03, 2929.04. However, it was not plain error that changed the outcome of the sentencing in light of the fact that the jury found two statutory aggravating circumstances beyond a reasonable doubt and the jury had little if any mitigating evidence to weigh against those aggravating circumstances. See Ohio v. Wogenstahl, 75 Ohio St. 3d 344, 357-60, 662 N.E.2d 311 (1996) (finding the same in similar circumstances). Moreover, the Court holds that the trial court's jury instructions were not erroneous. The trial court properly instructed the jury as to what the statutory aggravating circumstances were. (T.p. 2705-07.) The trial court's later comments that the jury could consider the "nature and circumstances of the aggravating circumstances[,]" (T.p. 2707-08, 2711), tracks the language of O.R.C. § 2929.03(D)(1) that the jury "shall hear testimony and other evidence that is relevant to the nature and circumstances of the aggravating circumstances the offender was found guilty of committing." The Court holds that appellate counsel was not

ineffective for not raising these issues on appeal.

As to the remaining subclaims, the Court finds either that the Petitioner's arguments are without merit, or alternatively, that any error established did not constitute plain error and therefore appellate counsel was not deficient for failing to raise the issues on appeal.

In sum, the Court denies Petitioner's objections and denies the Twelfth Ground for Relief.

**THIRTEENTH GROUND FOR RELIEF**

**Hawkins' rights under the Sixth and Fourteenth Amendments were violated because he was denied the right to effective assistance of counsel in his Motion for a New Trial.**

Petitioner asserts in this Ground for Relief that he was denied the effective assistance of counsel because the attorney team that handled his motion for a new trial, based on the newly discovered .25 caliber handgun possessed by Henry Brown, did not hire an independent ballistics expert to examine the gun. This claim was raised for the first time in the post-conviction relief proceedings. The trial court held that the claim was barred by *res judicata*. (Doc. #17 ex. OO p. 40-41.) The court of appeals affirmed the *res judicata* finding. See Hawkins, 1996 WL 348024, at *5.

This Court disagrees with the trial court's holding. Hawkins was represented by both his trial counsel and Robert Hastings, Jr., who represented Hawkins during direct appeal, on the motion for a new trial. Hastings was not required on direct appeal to argue that he had been ineffective in not retaining a ballistics expert to support the motion for a new trial. See Payton v. Brigano, 256 F.3d 405, 407 n.1 (6th Cir. 2001); Ohio v. Cole, 2 Ohio St. 3d 112, 443 N.E.2d 169, at syllabus (1982). In such cases, the ineffectiveness of counsel claim is cognizable in state post-conviction relief proceedings. See ids. Thus, the state courts erred in applying the *res judicata* bar to

Hawkins' claim.

Nonetheless, this Court agrees with Magistrate Judge Merz that Petitioner's claim fails on the merits. Petitioner cites to cases asserting that counsel must perform a reasonable investigation and that such investigation includes the retention of independent experts. See e.g., Sims v. Livesay, 970 F.2d 1575, 1580-81 (6th Cir. 1992) (holding that the failure to investigate and hire an expert constituted ineffective assistance of counsel under the circumstances). Even if the failure to retain a ballistics expert constituted ineffective assistance, Petitioner has not established that he was prejudiced thereby. He suggests only that had his attorneys retained an independent expert "they might have been able to present stronger evidence" to support their motion for a new trial. (Doc. #203 p.95.) A petitioner has not established prejudice if a court is left with only speculation on whether the outcome would have been different. See Baze, 371 F.3d at 322.

The Court overrules Petitioner's objections and denies the Thirteenth Ground for Relief.

**TWENTIETH GROUND FOR RELIEF**

**Hawkins was denied his rights as guaranteed by the Sixth and Fourteenth Amendments because of the ineffective assistance of counsel during his appeal.**

The Court has addressed either the merits of the underlying trial court issues and/or the merits of the ineffectiveness of appellate counsel in the First, Second, Third, Fifth, Sixth, Seventh, Twelfth, Thirteenth, Fifteenth, Sixteenth, Seventeenth, Eighteenth, Twenty-Third, and Twenty-Fourth Grounds for Relief, *supra*, and in the Twenty-Second Ground for Relief, *infra*. The Court adds to the foregoing analysis that Petitioner has not established that the appellate issues asserted in this Ground for Relief are "clearly stronger" than the eleven assignments of errors that Petitioner's appellate counsel did assert in his direct appeal. See Bigelow, 367 F.3d at 570 (quoting Monzo,

107

281 F.3d at 579).

       Petitioner's objections are overruled and the Twentieth Ground for Relief is denied.

**MISCELLANEOUS**

**TWENTY-FIRST GROUND FOR RELIEF**

**Ohio does not provide an adequate corrective process for the litigation of PC [post conviction] claims as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments.**

       Petitioner asserts that Ohio's system for post-conviction relief is unconstitutional. Magistrate Judge Merz held that the claim was not cognizable in a § 2254 habeas proceeding and this Court agrees.  The Sixth Circuit has held that claims asserting a denial of constitutional rights in state post-conviction relief proceedings are not cognizable in a § 2254 habeas proceeding because they are not related to the petitioner's detention.  See Roe v. Baker, 316 F.3d 557, 571 (6th Cir. 2002); Kirby v. Dutton, 794 F.2d 245, 247 (6th Cir. 1986).  The Sixth Circuit in Kirby specifically rejected a holding by the First Circuit to the contrary which is cited by Petitioner, Dickerson v. Walsh, 750 F.2d 153 (1st Cir. 1984).  See 794 F.2d at 247-48.

       For this reason, Petitioner's objections are overruled and the Twenty-First Ground for Relief is denied.

**TWENTY-SECOND GROUND FOR RELIEF**

**The trial court erred by denying Hawkins' motion to dismiss the specifications and by sentencing Petitioner to death because the Ohio death penalty scheme is unconstitutional.**

       Petitioner asserted this Ground for Relief in the state court proceedings and Magistrate Judge Merz held that the claim had not been procedurally defaulted.  That finding is not challenged in the parties' objections.  Therefore, this Court will also consider the various subclaims on the merits.

108

In his objections, Petitioner first asserts that Ohio's death penalty scheme is unconstitutional because it provides arbitrary and capricious imposition of the death penalty by allowing prosecutors virtually uncontrolled indictment discretion. The Sixth Circuit has rejected the general argument that Ohio's scheme permits the imposition of the death penalty in an arbitrary and capricious manner. See Buell, 274 F.3d at 367. Likewise, the Sixth Circuit has specifically rejected a challenge to Ohio's death penalty scheme based on the discretion afforded to prosecutors. See Williams, 380 F.3d at 963.

Petitioner next argues that Ohio's criminal justice system imposes death in a racially discriminatory manner. While this Court may be sympathetic to Petitioner's argument, it is foreclosed as an avenue of relief in this habeas proceeding by Supreme Court and Sixth Circuit precedent. The Supreme Court has held that a statistical study suggesting racially-motivated disparities in the selection and prosecution of death penalty cases is insufficient to support a claim that the decisionmakers in a particular petitioner's case acted with racial animus. See McClesky v. Kemp, 481 U.S. 279, 297-99 (1987). Following McCleskey, the Sixth Circuit has rejected claims similar to the one made here by Hawkins. See Smith v. Mitchell, 348 F.3d 177, 211 (6th Cir. 2003) cert. denied 125 S.Ct. 278 (2004); Coleman v. Mitchell, 268 F.3d 417, 441-42 (6th Cir. 2001).

Petitioner next asserts that Ohio's scheme does not prohibit arbitrary and capricious procedures because it does not specifically require the State to prove the absence of mitigating factors or that death is the only appropriate penalty. The Sixth Circuit held the same arguments, and similar related arguments, to be unavailing in Buell. See 274 F.3d at 367-68.

Petitioner also asserts that the catch-all statutory mitigation factor listed in O.R.C. § 2929.04(B)(7)– "Any other factors that are relevant to the issue of whether the offender should be

sentenced to *death*" (emphasis added)–violates the reliability component of the Eighth Amendment because its poor wording allows a jury to consider proof of mitigation as a non-statutory aggravating circumstance.  The Sixth Circuit has rejected this argument where the petitioner did not present any evidence that the state courts in his case, or in any Ohio case, have used the catch-all mitigating factor as evidence of an aggravating circumstance instead.  See Cooey, 289 F.3d at 926; see also Bonnell v. Mitchel, 301 F. Supp. 2d 698, 746 (N.D. Ohio 2004) (stating that the argument "defies logic").  Petitioner's argument here fails for the same reasons.

Petitioner has not challenged other aspects of the Report and Recommendations in regards to the Twenty-Second Ground for Relief.  The Court adopts those aspects of the Report and Recommendation as if fully rewritten herein.  Petitioner's objections are overruled and the Twenty-Second Ground for Relief is denied.

**IV.     CONCLUSION**

For the reasons stated above, the Court holds that, with the exception of issues discussed in regards to the Second Grounds for Relief, Petitioner Shawn Hawkins was not denied his Constitutional right to a fundamentally fair trial by the alleged acts and omissions of the trial court, the State prosecutors, or his attorneys either when considered on an individual basis or in light of their cumulative effect.  The Court **OVERRULES** Respondent's Objections (doc. #207) and **OVERRULES** Petitioner's Objections (doc. #210).

Pursuant to the Sixth Circuit's instructions in <u>DePew v. Anderson</u>, 311 F.3d 742, 754 (6th Cir. 2002), the Court hereby **CONDITIONALLY GRANTS** Petitioner's Amended Writ of Habeas Corpus (doc. #65) as to the Second Ground for Relief and vacates the unconstitutional sentence of death unless the State of Ohio elects to reinitiate sentencing proceedings within 180 days of the date of this Order.

IT IS SO ORDERED.

                          <u>    s/Susan J. Dlott                 </u>
                          Susan J. Dlott
                          United States District Judge